## MADDEN v. LA COFSKE.
### No. 7322.

Circuit Court of Appeals, Ninth Circuit.
July 10, 1934.

On Motion to Substitute Sept. 5, 1934.

Townsend, Jenckes & Edwards, of Phoenix, Ariz., for appellant.

Warren E. Libby, of Los Angeles, Cal., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

SAWTELLE, Circuit Judge.

On March 14, 1932, the appellant, upon his appointment by the court below as ancillary receiver of the Piggly-Wiggly Yuma Company, a corporation, took into his posses-

sion, as such receiver, the company's grocery business in Yuma, Ariz. The grocery business was carried on in a building leased by the company from the appellee, under two leases expiring on July 1, 1934, and October 6, 1934, at a monthly rental of $350.

The appellant conducted the grocery business until November 16, 1932, when he delivered it to Herman J. Schwartz, for $2,250. The appellant paid the appellee the full amount of the rent stipulated in the two leases during his entire occupancy of the premises.

On November 23, 1932, the appellant, without notice, petitioned the court below for an order authorizing the sale to Schwartz of the fixtures and stock of merchandise of the store, and the assignment to Schwartz of the leasehold interest in the premises for $2,-250. On the same day, an order was entered authorizing such sale and assignment, without notice to the appellee, and the sale and assignment were consummated.

On November 30, 1932, the appellant notified the appellee's attorney at Los Angeles, Cal., that the former had sold the Yuma store to Schwartz, to whom all future demands should be made.

On May 2, 1932, the appellee had filed with the appellant a claim against the estate of the corporation, in which the appellee demanded, among other things, rent for the full unexpired term of the leases, based upon the landlord's lien laws of Arizona.

On March 9, 1933, the appellee, through his attorney in fact, filed his petition in the court below, setting forth substantially the foregoing facts. In addition, the appellee averred that Schwartz paid no rent during his possession of the premises, and "that some time after business hours, on the evening of Saturday, the 3d of December, 1932, and during Sunday, the 4th day of December, 1932," and without the consent of the appellee or his daughter, who was his attorney in fact at Yuma, Schwartz "moved out all the merchandise and much of the movable fixtures used in connection with said grocery business, * * * and the whereabouts of said merchandise and fixtures is unknown to your claimant." The court found that the buyer "moved out of said premises, taking everything movable with him; the landlord notifying the receiver promptly of the action of said purchaser."

In his petition, the appellee prayed, among other things, that the receiver, the appellant herein, be required to pay to the appellant $1,575, representing the balance of the rent due for November, 1932, and for the rent for December, 1932, and January, February, and March, 1933. The appellee also prayed that the fund realized by the appellant from the sale "of the stock of merchandise and fixtures in said leased premises" be impressed "with a lien, as and for rent already accrued and to accrue," and "That sufficient of the funds in the hands of the receiver be held as and for rent to accrue on said leased premises," etc.

The appellant stipulated that the facts set forth in the petition were true and correct, and the issues were submitted to the court for determination of the questions of law raised thereby.

Thereafter the court entered judgment, inter alia, that the appellant "affirmed said leases and that he did not relieve himself of the liability provided for in said leases by an assignment"; that the said [appellee] has been diligent in pressing his claim for rent to said Receiver," and that the appellee had paid rent up to November 16, 1932. The lower court also decreed that the appellant should pay to the appellee the sum of $1,575, being rent to and including March, 1933, and also the sum of $1,400, the rent from April, 1933, to and including July, 1933, the month in which the decree was entered.

The court below also declared the amount of the decree to be "a first lien on the amount realized by the Receiver from the sale of said merchandise and fixtures placed upon and used in said leased premises, and that payment shall be made out of said moneys, and the balance out of any other moneys coming into the hands of said Leo A. Madden, Receiver." The court reserved the question of liability for rent not yet accrued at the time of the decree, for determination "in the light of future conditions."

It is agreed by both parties that the appellant "adopted" or "affirmed" the two leases.

The appellant bases his appeal upon two "assignments of fundamental error," in substance as follows:

(1) The lower court erred in its conclusion of law that the appellant, as receiver, did not relieve himself of the obligation to pay the rent by assigning the leases.

(2) The lower court erred in its conclusion of law that the appellee is entitled to a first lien on the funds realized by the appellant from the sale of the merchandise and fixtures in the leased premises.

To determine the first question presented by the appellant, it is first necessary to ascer-

tain what was the appellant's relation to the lease. Was he, as he contends, "by operation of law an assignee of the term," or was he, as maintained by the appellee, "substituted, in effect, for the original lessee upon his adoption or affirmance of [the] lease contract"?

In an oft-quoted opinion by Judge Jenkins, in Farmers' Loan & Trust Co. v. Northern Pac. R. Co. (C. C.) 58 F. 257, 261, unequivocal approval is given to the proposition that the liability of a receiver is "the common liability of the assignee of a lease." Judge Jenkins used the following language:

"The general principle by which questions of this character are to be ruled is well stated by Mr. High in his work upon Receivers (section 273):

"'As a rule, receivers are not liable upon the covenants of the persons over whose effects they are appointed, but become liable solely by reason of their own acts. Receivers who have been appointed over a corporation, and who have accepted the trust, and taken possession of the assets, do not thereby become liable for the rent of the premises held by the company under a lease, nor can they be held liable until they elect to take possession of the premises, or until the doing of some act which would in law be equivalent to such an election. But when a receiver enters upon and occupies premises which had been leased to a corporation over which he is appointed, he thereby becomes liable for the rent due under the lease, the liability in such case being the common liability of the assignee of a lease, and not for the debts due from the corporation; and in such a case, the facts being undisputed, it is proper for the court to direct the receivers to make payment to the lessor without a reference to determine the matter.'

"There appears to be no dispute with reference to that general principle as announced by Mr. High. It is restated by the supreme court in perhaps stronger and more emphatic terms in the case of Oil Co. v. Wilson, 142 U. S. 313–322, 12 S. Ct. 235 [35 L. Ed. 1025], in these words:

"'The receiver did not simply, by virtue of his appointment, become liable upon the covenants and agreements of the railway company. Upon taking possession of the property he was entitled to a reasonable time to elect whether he would adopt this contract and make it his own, or whether he would insist upon the inability of the company to pay, and return the property in good order and condition, paying, of course, the stipulated rental for it so long as he used it.'

"In other words, when the court, upon the petition and at the prayer of the complainant, appoints receivers, who are directed to take possession of the leased lines of railway operated in connection with the main line, such receivers take by order of the court, and do not, therefore, by the mere act of such possession, become assignees of the term; they having, so to speak, a breathing space to determine whether or no they will assume the covenants of the lease. * * * But that possession does not ordinarily operate to render the receivers assignees of the term."

A careful reading of Judge Jenkins' language compels the conclusion that, approving as he does the statement of the rule quoted from High's text, the learned jurist regards the receiver's relation to the lease that of an assignee of the term, provided the receiver affirms the lease. But, if the receiver does not affirm the lease, his liability, under the rule laid down in the Wilson Case, also quoted by Judge Jenkins, is simply that of "paying * * * the stipulated rental for it so long as he used it." Certainly there is nothing in the opinion by Judge Jenkins, or in the authorities quoted therein, which would support the doctrine that a receiver becomes liable as a "substituted lessee," as contended by the appellee, even though the receiver does affirm the lease, as in the instant case.

On the question of the receiver's rights and obligations with respect to leases, the decision by Judge Jenkins has been repeatedly cited with approval. Carswell v. Farmers' Loan & Trust Co. (C. C. A. 6) 74 F. 88, 91; Mercantile Trust Co. v. Farmers' Loan & Trust Co. (C. C. A. 8) 81 F. 254, 258, certiorari denied, 168 U. S. 710, 18 S. Ct. 944, 42 L. Ed. 1213; Dayton Hydraulic Co. v. Felsenthall (C. C. A. 6) 116 F. 961, 965; Pennsylvania Steel Co. v. New York City Ry. Co. (C. C. A. 2) 198 F. 721, 729. In the Carswell and Dayton Hydraulic Cases, supra, the opinions were written by Judge Lurton, who later became an associate justice of the Supreme Court.

Another unequivocal statement on the subject is to be found in Westinghouse Electric & Mfg. Co. v. Brooklyn Rapid T. Co. (C. C. A. 2) 6 F.(2d) 547, 549, a decision quoted from by the appellee himself. In that case, Judge Hough was unquestionably enunciating the general rule, and was not attempting to apply the law of New York. The learned jurist said:

"A receiver appointed in a creditors' suit, who finds himself in possession of a leasehold estate, does not by possession become assignee

of the term; he may become an assignee voluntarily, or he may so manage or mismanage the business committed to his charge as to be held in invitum to have 'adopted the lease.' "

Again, the same assertion is found in Tiffany on Landlord and Tenant, vol. 1, p. 984, § 158a (2) (1):

"The courts have, however, more usually regarded the receiver as liable on such covenants, as being an assignee by operation of law, provided he has indicated an intention to accept the leasehold as a part of the assets of the insolvent tenant, but not otherwise, thus applying the same rule as is applied in the case of a trustee in bankruptcy, and, by the American decisions, of an assignee for creditors."

Perhaps a clearer concept of the receiver's relation to the leaseholds of the estate can be obtained by inquiring into the nature of the privity that exists between him and the lessor. Is the privity one of contract or of estate?

On this point there are numerous decisions of unquestionable authority.

In the leading case of United States Trust Co. v. Wabash Railway, 150 U. S. 287, 299, 300, 14 S. Ct. 86, 90, 37 L. Ed. 1085, the doctrine is thus stated:

"The general rule applicable to this class of cases is undisputed that an assignee or receiver is not bound to adopt the contracts, accept the leases, or otherwise step into the shoes of his assignor, if, in his opinion, it would be unprofitable or undesirable to do so; and he is entitled to a reasonable time to elect whether to adopt or repudiate such contracts. If he elect to adopt a lease, the receiver becomes vested with the title to the leasehold interest, and a *privity of estate is thereby created between the lessor and the receiver,* by which the latter becomes liable upon the covenant to pay rent. [Cases cited.]" (Italics our own.)

Following the rule laid down in the Wabash Case, supra, the Circuit Court of Appeals for the Second Circuit, in the case of Pennsylvania Steel Co. v. New York City Ry. Co., supra, at page 729 of 198 F., said:

"If a receiver elect to adopt a lease, he becomes vested with the title to the leasehold interest and a privity of estate is thereby created between the lessor and him by which he becomes liable upon the covenant to pay rent."

The identical rule is stated in American Brake Shoe & Foundry Co. v. New York Rys. Co. (C. C. A. 2) 282 F. 523, 529, appeal dismissed, 262 U. S. 736, 43 S. Ct. 704, 67 L. Ed. 1207; Pennsylvania Steel Co. v. New York City Ry. Co. (D. C.) 219 F. 939, 958; General Finance Corporation v. New York State Rys. (C. C. A. 2) 54 F.(2d) 1008, 1009; De-Wolf v. Royal Trust Co., 173 Ill. 435, 50 N. Ed. 1049, 1050; Lewis on The Law of Leases of Real Property, pp. 35, 493, 494.

See, also, with reference to the privity of estate existing between the assignee and the lessor, Northwestern Mut. Life Ins. Co. v. Security S. & T. Co. (C. C. A. 9) 261 F. 575, 578.

It seems well established, therefore, that the receiver, upon electing to adopt or affirm a lease of the estate, becomes an assignee of the term and consequently holds his title by privity of estate and not by privity of contract.

We advance, next, to the consideration of the question of how this privity of estate is terminated; in a word, of how the receiver, after having affirmed a lease, can relieve himself of the obligation to pay the rent for the rest of the term.

The Supreme Court of Arizona itself has pointed the way. In McKee's Cash Store v. Otero, 19 Ariz. 418, 423, 171 P. 910, 912, Mr. Chief Justice Franklin exhaustively reviewed the authorities on the subject, saying:

"The liability of C. W. McKee [the lessee] attaches by privity of contract, and the assignment to McKee's Cash Store containing no express condition on its part to pay the rents reserved for the term, its liability attaches by privity of estate. The right to enjoy the leasehold interest as distinguished from the actual possession of the premises is the principle upon which rests the assignee's liability to the lessor. In Moline v. Portland Brewing Co., 73 Or. 532, 144 P. 572, the court said:

" 'The assignee of the lease becomes liable for the rent by reason of the privity of estate; and not by reason of the occupancy of the premises; and by mere abandonment thereof he cannot escape liability.'

"See, also, McLean v. Caldwell, 107 Tenn. 138, 64 S. W. 16; Chicago Attachment Co. v. Davis Sewing Machine Co. (Ill.) 25 N. E. 669; Bonetti v. Treat, 91 Cal. 223, 27 P. 612, 14 L. R. A. 151.

"*If McKee's Cash Store, as assignee, wished its liability to pay rent to continue only during its actual possession of the premises, it should have reassigned the lease as well as abandoned the possession. By so doing the*

*privity of estate would have terminated."* (Italics our own.)

This statement by the highest court of Arizona accords with general law. In Tiffany, op. cit., at pages 987, 988, § 158a (2) (n) (aa), the learned author says:

"The liability of the assignee of the leasehold on the covenants entered into by the lessee, though based primarily on 'privity of contract', as existing only by reason of such covenants, is also, in a sense, based on privity of estate, as being imposed on him by reason of ownership of the leasehold. Consequently, such liability endures only so long as this privity continues, and it comes to an end when the privity is ended by the assignment of the leasehold interest to another, a 'reassignment' by him, as it is frequently expressed. The effect thus given to a reassignment by the assignee is not changed by the fact that it is made for the purpose of freeing him from liability, or that it is made with knowledge on his part that his assignee is entirely insolvent, a mere beggar in fact, or is otherwise unable to perform the covenants of the lease. * * *

"In order that the reassignment of the leasehold may relieve the assignee from liability, it is not necessary that the landlord be notified of the reassignment, or that he consent thereto, and it has been held that the reassignment is effective for this purpose though it is in violation of a covenant of the lease not to assign without license, this according with the general rule that an assignment in violation of such a covenant is valid."

Tiffany applies the foregoing doctrine specifically to receivers. After stating, as we have seen, that a receiver is "an assignee by operation of law," the text-writer continues:

"Conceding that the receiver becomes liable for rent by retaining possession, he can terminate that liability by assigning over to some 'man of straw.'" Page 986.

The author then adds a footnote referring the reader to section 158a (n), quoted from above, thus further indicating that he regards a receiver as having the rights of an assignee of a leasehold.

Again, in 35 C. J. 998–999, § 101bb (aa), the rule is thus stated:

"An assignment of the lease by the assignee thereof terminates his liabilities so far as they rest upon privity of estate, equity following the law in this respect. The rule applies, although the lessee has covenanted for himself and assigns not to assign without the lessor's consent, or although the assignment is for the purpose of avoiding the obligations of the lease or to an irresponsible party, but the assignment must be actual and valid, and have been accepted by the assignee. Notice to the landlord is not essential."

See, also, Taylor's Landlord and Tenant (9th Ed.) vol. 2, p. 41, § 457; 15 Cal. Jur. pp. 753–755, §§ 168, 169; Bell v. American Protective League, 163 Mass. 558, 40 N. E. 857, 28 L. R. A. 452, 47 Am. St. Rep. 481; T. A. D. Jones Co. v. Winchester Repeating Arms Co. (C. C. A. 2) 61 F.(2d) 774, 775.

Finally, we turn to the second "assignment of fundamental error," namely, that the lower court erred in holding that the appellee is entitled to a first lien upon the funds realized from the sale of the merchandise and fixtures in the leased premises.

The state statute on the "landlord's lien for rent" is to be found in section 1958 of the Revised Code of Arizona 1928. That section provides as follows:

"The landlord shall have a lien on all the property of his tenant not exempt by law, placed upon or used on the leased premises until his rent is paid, such lien, however, shall not secure the payment of rent ensuing after the death or bankruptcy of the lessee or after an assignment for the benefit of lessee's creditors, and such landlord may seize, for rent, any personal property of his tenant found on the premises, but the property of any other person, although found on the premises, shall not be liable. If the tenant fail to allow the landlord to take possession of such property for the payment of rent, the landlord may reduce such property to his possession by action to recover possession, and may hold or sell the same for the purpose of paying said rent. The landlord shall have a lien upon the crops grown or growing upon the leased premises for rent thereof, whether the same is payable in money, articles of property, or products of the premises, and also for the faithful performance of the terms of the lease, and such lien shall continue for a period of six months after the expiration of the term for which the premises were leased. Where the premises are sub-let or the lease assigned, the landlord shall have the like lien against the sublessee or assignee as he has against the tenant and may enforce the same in like manner."

The question here to be determined is whether the merchandise and fixtures were sold subject to the landlord's lien, or whether the lien was transferred from the goods to the proceeds therefrom.

Again we find that the decisions of the Supreme Court of Arizona will assist us to a proper determination of the question.

The appellee asserts that "Since the order here did not expressly state that it was not made free of liens, we do not concede the point that it was therefore made subject thereto."

But it is not necessary for the appellee to "concede the point," for the Supreme Court of the state has already decided the question.

In Murphey v. Brown, 12 Ariz. 268, 277, 100 P. 801, 804, a lease case greatly relied upon by the appellee himself, the court said:

"Where a lien enforceable at law has attached to property, the purchaser takes the property subject to the lien, irrespective of notice, except where notice, real or constructive, is made essential by registration laws or the statute whereunder the lien arises."

In the instant case, the purchaser from the receiver knew, or should have known, that a leasehold was involved; for the order authorizing the sale of the property referred to Piggly Wiggly Store No. 1, Yuma, and to the "assignment of the leasehold interest in said premises."

And, in the words of the court in Friedman v. Murphey, 14 Ariz. 42, 47, 124 P. 654, 656, the purchaser, knowing the tenant "to be such, is presumed to know the terms of the tenancy."

In Friedman v. Murphey, supra, at pages 47, 48, of 14 Ariz., 124 P. 654, 656, also a lease case, involving the identical parties that figured in Murphey v. Brown, supra, the Supreme Court of Arizona repeated and emphasized the rule as to the landlord's lien announced in the earlier case:

"We quote, as expressing our view of the law, the case of Lehman v. Stone, 4 Willson, Civ. Cas. Ct. App. § 121, pp. 182, 183, 16 S. W. 784: 'It is claimed by appellant that she is a purchaser of said property in good faith, for a valuable consideration, without notice of appellee's lien thereon for rent. Concede that she purchased in good faith, and paid a valuable and full consideration for said property, and had no actual notice of appellee's lien for rent, still, under the law, she took the property subject to appellee's lien. She had constructive notice of said lien at the time she purchased because of the fact that said property was upon the rented premises.' Also, Weil v. McWhorter, 94 Ala. 543, 10 So. 132: 'And we cannot doubt that, ordinarily, one who purchases from a tenant of a building property to which the landlord's lien has attached, with knowledge of the existence of the tenancy, takes it subject to the lien. Notice of the tenancy is sufficient to put him on inquiry as to whether any rent has accrued, and where his inquiry, if properly prosecuted, and information sought of the landlord, would disclose that rent had accrued, whether due or not, the purchaser is held to know the fact. To make inquiry of the tenant will not suffice.' [Cases cited.]" (Italics ours.)

We therefore hold that, under the Arizona decisions, Schwartz purchased the property from the receiver subject to the landlord's lien, and that therefore the proceeds from the sale were not impressed with such lien. The fact that Schwartz thereafter removed the property from the premises cannot affect the receiver; for, in the language of Murphey v. Brown, supra, at pages 278, 279, of 12 Ariz., 100 P. 801, 805, "such right as [the landlord] may have against the stock of merchandise must be predicated upon the facts as they existed at the time of [the reassignee's] purchase."

The appellee says much concerning his "equitable right," and of the receiver's "inequitable conduct" in failing "to take security for the performance of the lease," in placing Schwartz in possession before filing the petition for an order of sale, in not notifying the landlord of the sale with sufficient promptness, etc.

■ The answer to this contention is threefold: First, the record does not establish the charge of inequitable conduct against the receiver, and the findings of fact and the conclusions of law of the lower court, upon which the appellee relies, do not so state; second, as we have seen, the landlord is not entitled to notice of a reassignment, and, in this respect, "equity follows the law"; third, there is no support in the record for the assumption that Schwartz is financially an "irresponsible" party; and, fourth, the lower court, knowing the date on which Schwartz took possession, did not condemn the procedure as inequitable. Indeed, the appellee discloses that he himself is not contending that he is being forced to look to the receiver alone because Schwartz is unable to respond for the rent:

"The liability of the assignor and assignee is a joint one, and the landlord may proceed against either or both, but can have but one satisfaction. It is not necessary, therefore, for us to proceed against Mr. Schwartz. We choose at this time to first proceed against the receiver. (McKee's Cash Store v. Otero)." (Italics ours.)

As we have seen, the appellee's "choice" to proceed against the receiver is, under the law, an unfortunate one; and, though invoking

the aid of equity, the appellee has not shown that he cannot obtain redress from any one else.

Accordingly, the decree of the court below is reversed.

On Motion to Substitute.

Before WILBUR and SAWTELLE, Circuit Judges.

WILBUR, Circuit Judge.

■ Katie La Cofske, widow of Morris Le Cofske, suggests the death of her husband, Morris La Cofske, the appellee in the above-entitled cause, as occurring on May 19, 1934, and requests that she be substituted as the appellee, not by reason of the fact that she represents the interests of her deceased husband, but because of the fact that the property whose rents, issues, and profits are involved was deeded to her by her husband on September 17, 1928. Consequently, at the time the action was brought and long prior thereto, she was the owner of the property in question. It is alleged that she was the real party in interest and that the suit was prosecuted by her husband on her behalf. She is represented in her application for substitution by the same attorneys who had represented her husband, the appellee. The appellant opposes the motion for substitution. Rule 19 of this court provides for the substitution of the representative of a deceased person, and 28 USCA § 778 also provides for the substitution of the executor or administrator of a deceased party. The widow has not applied for letters testamentary or of administration and her sole claim to represent the deceased is based upon a deed given to her prior to the beginning of the action.

The motion for substitution is denied.

■ It appearing that at the time the opinion and order for reversal was entered the appellee was dead, the order of reversal is vacated and entered nunc pro tunc as of February 26, 1934, the date of the argument on appeal herein. See 28 USCA § 778; Clay v. Smith, 3 Pet. 411, 7 L. Ed. 723; Mitchell v. Overman, 103 U. S. 62, 64, 26 L. Ed. 369; Coughlan v. Dist. of Columbia, 106 U. S. 7, 11, 1 S. Ct. 37, 27 L. Ed. 74; Borer v. Chapman, 119 U. S. 587, 7 S. Ct. 342, 30 L. Ed. 532; City of New Orleans v. Warner, 176 U. S. 92, 20 S. Ct. 280, 44 L. Ed. 385; Bell v. Bell, 181 U. S. 175, 21 S. Ct. 551, 45 L. Ed. 804; Seymour v. Richardson Fuelling Co., 205 Ill. 77, 68 N. E. 716; Hocks v. Sprangers, 113 Wis. 123, 87 N. W. 1101, 89 N. W. 113; Lenoir Car Wks. v. Trinkle (C. C. A.)

228 F. 634; Merchants Loan & Trust Co. v. Egan, 143 Ill. App. 572; Clark v. Van Cleef, 75 N. J. Eq. 152, 71 A. 260; In re Pillsbury's Estate, 175 Cal. 454, 166 P. 11, 3 A. L. R. 1396; Hominy Creek Ld. Co. v. Gauley Coal Ld. Co., 103 W. Va. 477, 138 S. E. 95; Garrett v. Byerey, 155 Wash. 351, 284 P. 343, 68 A. L. R. 254.