111 F.2d 83 (1940)
In re WIL-LOW CAFETERIAS, Inc.
SIEGEL
v.
SCHULTE.
No. 255.
Circuit Court of Appeals, Second Circuit.
April 8, 1940.
Otterbourg, Steindler & Houston, of New York City (Aaron Rosen and Arnold A. Jaffe, both of New York City, of counsel), for appellant.
Jerome Eisner, of New York City (Julius B. Sheftel, of New York City, of counsel), for appellee.
Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.
SWAN, Circuit Judge.
The appellant is the trustee in bankruptcy of Wil-Low Cafeterias, Inc., which *84 filed a petition for reorganization under section 77B of the Bankruptcy Act, 11 U. S.C.A. § 207, and was continued in possession of its property until June 7, 1938, when liquidation was ordered and the trustee appointed. The appellee is the landlord of premises leased to Wil-Low Cafeterias, Inc. and occupied by it as debtor in possession until the appointment of the trustee who transferred the leasehold to a purchaser. The purchaser, however, vacated the premises in August 1938 and paid no rent after July. The landlord thereafter filed a priority claim against the debtor's estate for (1) unpaid rental of $167.72 for the period from June 1 to June 7, 1938 and (2) unpaid rental for the period from August 1, 1938 to April 30, 1939, the expiration of the term. The referee in bankruptcy allowed priority to only the first item, and reserved the second as a general claim which the trustee might still dispute. The district court adjudged that the entire claim was entitled to priority on a parity with other administration expenses, but referred back to the referee determination of its exact amount. From this order the trustee has appealed.
The premises in question were held by the debtor under two subleases from the claimant-appellee which was itself a tenant and a debtor in reorganization proceedings. Each sublease ran for a term ending April 30, 1939, and contained a prohibition against assignment without the landlord's written consent. The aggregate yearly rental was $11,750. The debtor in possession paid the rent at this rate through February 1938, pending determination whether to adopt or reject the leases. In March 1938 an agreement was made between the claimant and the debtor ("individually and as debtor in possession") reducing the rent to the rate of $8,500 per annum, payable in equal monthly instalments in advance from March 1, 1938 to April 30, 1939. The agreement provided that it was to be inoperative until its execution had been approved by an order entered in the debtor's reorganization proceedings, and that, subject to such court approval, the debtor "shall and does hereby affirm and adopt said subleases held by second party, as modified as aforesaid." There were also provisions recognizing that if a plan of reorganization should be confirmed and the subleases assigned, pursuant to the plan, to a corporate assignee which should assume the obligations of the subleases as modified by the agreement, the debtor should be released from all obligations to be performed by the tenant subsequent to the assignment. This was followed by a provision that the foregoing right of assignment shall only enure to the benefit of the debtor, "and no other assignment of said subleases, except with the express written permission of the landlord, shall be valid." The fourth paragraph of the agreement provided that if the overlease should be affirmed and disposed of, or disaffirmed in the Schulte reorganization, the debtor would attorn to the transferee or the overlandlord, and D. A. Schulte, Inc., should be released from all obligations in respect to the subleases. By its order of April 8, 1938 the bankruptcy court "ratified and approved" the agreement and authorized the debtor "to affirm the leases as modified by the aforesaid agreement." The debtor in possession paid rent at the modified rate for the months of March, April and May, 1938. Shortly after his appointment on June 7, 1938, the trustee notified the claimant that he had parted with possession of the premises and would make no payment for rent or occupation after June 8th. Pursuant to an order of the referee in bankruptcy the trustee sold the subleases, with the fixtures and restaurant equipment in the premises, and executed a bill of sale to the purchaser dated June 21, 1938. By letter dated June 24, 1938 the claimant was notified by the trustee's attorneys that the trustee had vacated the premises as of June 20, 1938, turned over possession to the purchaser of the debtor's assets, and disaffirmed all leases. Such disaffirmance was authorized by an order of the referee dated June 25, 1938. After paying rent to the claimant for part of June and for the month of July the purchaser vacated the premises. The claimant did not find a new tenant.
The main dispute is whether the agreement above described constituted a new lease by the debtor in possession, made with the approval of the court, or was merely a modification of the subleases and an adoption of them as modified. The referee took the latter view; the district judge the former.
A debtor continued in possession by court order is a court officer analogous to a receiver or trustee. In re Avorn Dress Co., 2 Cir., 79 F.2d 337; In re Walker, 2 Cir., 93 F.2d 281, 283. Had the debtor in possession adopted the subleases without *85 any modifying agreement, it would have been liable on covenants running with the land so long as it remained in possession, but its liability for subsequently accruing rent would have been terminated by a transfer of the leasehold to another. Madden v. La Cofske, 9 Cir., 72 F.2d 602, 95 A.L.R. 370, and authorities therein cited. This is because adoption of a lease by an equity receiver or a trustee in bankruptcy creates privity of estate but no privity of contract. The district judge was of opinion that the written agreement, dated March 2, 1938 and subsequently ratified and approved by the court, was in effect a new lease, making the debtor in possession liable upon the covenants as much as would any contract entered into with authority of the court. Schulte, Inc., v. Loft, Inc., 271 N.Y. 420, 3 N.E.2d 578, is cited as authority for this view. But there the facts were quite different. The landlord had evicted its lessee and thereafter made an agreement with the sublessee, reducing the rent for one year and revising the third paragraph of the lease between the landlord and its former lessee in language which used the terms "lessor" and "lessee". The court stated that these terms could have no meaning unless they referred to Schulte and Loft, for the original lessee had been dispossessed months before; and such eviction ended the former lease. Schulte, Inc., v. Loft, Inc., 157 Misc. 650, 653, 284 N.Y. S. 660. Moreover, there were other phrases, such as "the term hereby demised," "the term of this lease" and "this lease", which show that the new agreement was regarded as a lease. In the case at bar we do not think the agreement can properly be construed as a new lease made by the debtor in possession. There are no words indicating that the debtor in possession assumed the covenants of the subleases. The debtor's only express promise was to "affirm and adopt" the subleases, if the court should approve. There was no promise to pay rent, but merely a mutual undertaking that the subleases "hereby are amended so that the rental payable thereunder shall be at the rate of $8,500 per annum for the period commencing March 1, 1938 and ending April 30, 1939, which rental shall be payable in equal monthly instalments in advance." The recital of the period during which the reduction should be operative does not justify an inference that the debtor promised to pay it for that period; indeed, the third paragraph recognized that the debtor would be released by a transfer pursuant to a plan of reorganization confirmed by the court. In our opinion the agreement must be construed as intended to create, subject to the court's approval, the same legal relations as though the debtor in possession had adopted the original subleases, except that the rental therein specified was to be reduced for the remainder of the term. An assignee of a lease can agree with the landlord for a reduction of the rent without changing the assignee's privity of estate to a privity of contract. Frank v. New York, L. E. & W. R. Co., 122 N.Y. 197, 221, 25 N.E. 332. This was what the parties did in the present case. Hence the debtor in possession was not bound by privity of contract but only by privity of estate.
Even so, the appellee contends, neither the debtor in possession nor the trustee could rid the estate of liability by transferring the subleases because the agreement forbade any assignment except pursuant to a plan of reorganization confirmed by the court. In our opinion the provision that "no other assignment of said subleases, except with the express written permission of the landlord, shall be valid" was no more than a reassertion of a condition stated in the subleases; its purpose, we think, was to prevent the landlord's consent to an assignment pursuant to a plan of reorganization from being a waiver of the condition in the subleases, and thus avoid the ancient doctrine that a condition not to alien without license is ended by the first license granted. Dumpor's Case, 4 Rep. 119. But however that may be, the provision in the agreement could have no greater effect than a like covenant in a lease and it is well settled that the latter does not preclude a transfer by operation of law. Gazlay v. Williams, 210 U.S. 41, 28 S.Ct. 687, 52 L.Ed. 950; see Model Dairy Co., Inc., v. Foltis-Fischer, Inc., 2 Cir., 67 F.2d 704, 706. Hence the trustee's transfer to a purchaser terminated any liability of the estate for subsequently accruing rent. Because the trustee never affirmed the subleases, but on the contrary, obtained an order of the referee purporting to authorize their disaffirmance, the appellee argues that the trustee's assignment of them to a purchaser was ineffectual. But it seems clear that what was ineffectual in the trustee's conduct was his attempt to disaffirm leases which the debtor in possession had validly adopted. By virtue *86 of such adoption the debtor in possession was an assignee of the subleases in relation to the landlord; the trustee succeeded to its rights as such assignee and had the same legal power to transfer the subleases as the debtor in possession had acquired by lawful adoption of them. The order of liquidation did not initiate a new bankruptcy proceeding; it was merely an order in a proceeding begun in April 1937 by the filing of the debtor's petition. With the court's approval an officer of the court had affirmed the subleases; it is incredible that another officer subsequently appointed need reaffirm them or has any power to disaffirm them, at least in the absence of some extraordinary circumstance. See Finletter, The Law of Bankruptcy Reorganization, p. 234; 2 Gerdes, Corporate Reorganization, § 701. Moreover, by accepting rent from the trustee's assignee the landlord recognized the validity of the transfer and may not thereafter assert that the trustee's assignment was ineffectual. Murray v. Harway, 56 N.Y. 337; Woollard v. Schaffer Stores Co., 272 N.Y. 304, 5 N.E.2d 829, 109 A.L.R. 1262.
The order appealed from is reversed with directions to reinstate the order of the referee.