In re FASHION WORLD, INC., d/b/a/ Stacey's, Debtor.

Stephen M. RICHMOND and the Law Firm of Kaye, Fialkow, Richmond & Rothstein, Creditors' Agent For Creditors of Fashion World, Inc., Plaintiffs,

v.

William G. FINARD, General Partner of Saugus Realty Co., a Massachusetts Limited Partnership, Defendant.

Bankruptcy No. 84–458–HL.
Adv. No. 84–0363.

United States Bankruptcy Court, D. Massachusetts.

March 20, 1985.

James M. Liston, Kaye, Fialkow, Richmond & Rothstein, Boston, Mass., for plaintiffs.

Joseph Landis, P.C., Boston, Mass., for defendant.

## MEMORANDUM ON MOTION FOR JUDGMENT OF THE PLEADINGS

HAROLD LAVIEN, Bankruptcy Judge.

Plaintiff, the Creditors' Agent for Creditors of Fashion World[1] filed its amended complaint on January 4, 1985. In short, it contends that a change in the lease between the debtor and its landlord, Murray W. Finard & Alfred Sharemow, d/b/a/ Saugus Realty Co., was a fraudulent transfer. The facts and issues are, however,

somewhat more complicated. In response to the complaint, the defendant/landlord filed a motion for judgment on the pleadings. Each party filed memoranda. Accordingly, based upon the uncontested facts of the plaintiff's complaint, the admissions of the plaintiff, and the May 29th Motion to Reject Unexpired Lease and the June 13th order rejecting such lease, I allow the defendant's motion for judgment on the pleadings based on the following rationale.

Debtor filed its Chapter 11 petition on April 2, 1984. On May 29, 1984, the debtor filed a motion to reject the unexpired lease of Saugus Realty Co., the lease in question. In part, the motion to reject provided:

> 2. Pursuant to the lease Landlord demised certain premises located in a shopping center situated on Route 1 in Saugus, Massachusetts (the "Leased Premises"). The lease is for an initial term of ten years with an option to extend for 2 additional periods of five years each. The annual rental due under the lease is $24,200. In addition there are provisions for payment of percentage rates based on gross sales of the Leased Premises. The Leased Premises consist of approximately 4,000 square feet.

Further, nowhere in its motion did the debtor describe the lease as foreshortened by reason of the Agreement. The debtor, in its said Motion, averred that the debtor had vacated the leased premises prior to the commencement of the Chapter 11 case, and that it had been vacated based on the debtor's efforts to reduce expenses. Debtor further averred that the leased premises had been an unprofitable store for it; and that since the commencement of the Chapter 11 case, the debtor had not occupied nor

---

1. On June 11, 1984, a Joint Plan of Reorganization proposed by the debtor and the Creditors' Committee (the "Plan") was filed with the court. The Plan provided for the acquisition by Fashion Gallery, Inc. of substantially all of the debtor's assets for a purchase price of approximately 1.8 million dollars. Those assets that were not purchased by Fashion Gallery, Inc. were defined in section 1.14 of the Plan as "Remaining Assets." Ownership of the Remaining Assets, including the right to prosecute fraudulent conveyance actions, was vested irrevocably in the Creditors' Agent for the benefit of creditors. On July 12, 1984, this Court entered a Memorandum and Order Confirming the Plan, paragraph 9 of which provides that as of the Consummation Date, "title to all assets and property of the Debtors comprising the Remaining Assets shall be vested in and transferred to the Creditors' Agent for the benefit of the estate of the Debtor and its creditors." Creditors' Committee's counsel acceded to the position of Creditors' Agent.

used the leased premises; that neither of the parties (then) interested in acquiring the assets of the debtor had expressed an interest in acquiring the leased premises and concluded "the debtor believes that it is in the best interest of the estate to reject the Saugus lease forthwith".

A hearing was held on the motion on June 8, 1984 at which the defendant and the plaintiff were both present. At the hearing, debtor's counsel represented that the debtor had abandoned the premises prior to the filing of the Chapter 11 case. The Court noted that the debtor had abandoned the property, and no one contended otherwise. Thereafter, on June 13, 1984, the Court entered its Order, for sufficient reason, that the lease should be rejected pursuant to Section 365 of the Bankruptcy Code.

No appeal was filed from the Order Allowing the Motion to Reject Unexpired Lease. No motion to affirm the lease was ever filed, and no objection was made by counsel for the Creditor's Committee, nor did anyone even suggest that the January 6, 1984 termination right given to the landlord was not a considered business judgment to reject the lease for its burdensome nature.

Despite the clarity of the motion, the representations of debtor's counsel, and the representations, or lack thereof, by the plaintiff, the lease, as a matter of actual fact, was not, at the time of the motion to reject, one for an initial period of ten years with two additional five-year options but, rather, a lease terminable on 30-days' notice by the landlord as a result of an agreement between the landlord and the pre-filing debtor. Essentially, this converted a tenancy for a term of years into a tenancy at will. This amendment was given by the debtor without receiving any consideration and as a result of the debtor's desire to be relieved of this unprofitable store as soon as possible.

Plaintiff contends that such a change provided it with no choice but to agree to rejection of the lease. To assume the lease, it argues, and to bear the cost of rent and litigation without being convinced of a favorable result, would be impractical. This argument, however, is based upon two misconceptions. First, that the plaintiff's decision not to object to the debtor's motion was based upon a tenancy at will. If anything is clear, it is that any decision by the debtor, the plaintiff, and this Court, was based upon a tenancy for years and *not* a tenancy at will. Secondly, if this January 6, 1984 amendment had not existed or was voided, the debtor in this Court would have had to make the rental payments in order to retain its rights to sell or assign the lease. Section 365(d)(3) of the 1984 Amendments, though not applicable to this case, reinforces this Court's previous position. Accordingly, neither the debtor nor anyone on its behalf can complaint if they are not allowed to circumvent that procedure by some secret intention to let the Court think they are in agreement, but intend to later object and thereby avoid the need to make the appropriate payments to the landlord.

Defendant/landlord's counsel argues that the rejection of the unexpired lease on June 13, 1984 estops plaintiff from arguing that the transfer was fraudulent. In the peculiar circumstances of this case, he is correct. Be it based upon waiver, *Dunkel Oil Corporation v. Independent Oil and Gas Co.*, 70 F.2d 967 (7th Cir.1934), laches, *Sparhawk v. Yerkes*, 142 U.S. 1, 12 S.Ct. 104, 35 L.Ed. 915 (1891), (promissory) estoppel, *Cellucci v. Sun Oil Co.*, 2 Mass. App. 722, 320 N.E.2d 919 (1974), *aff'd* 368 Mass. 811, 331 N.E.2d 813 (1975), or (collateral) estoppel, *In re White Motor Corp.*, 44 B.R. 563 (N.D.Ohio 1984), the plaintiff cannot come into this Court now.

There are two major schools of thought concerning the standard for rejection of an unexpired lease—the "burdensome" standard and the "business judgment" standard. *Collier on Bankruptcy*, ¶ 365.03, at 365–14 to 15 (15th Ed.1984). This Court need not pick between the two. In the motion to reject and the hearings before the Court on that matter, if anything was represented and anything made clear, it was that the lease was considered worth-

less by the debtor (as a ten-year lease with options), that, even worse, it was burdensome, that it was a continual drain on the assets of the debtor, and that good business judgment called for its termination as an administrative expense, as soon as possible. The plaintiff received the motion, was present at the hearing, and never filed an objection to rejection. Moreover, the Court ordered rejection of such lease based upon the representations of burdensomeness. The Court can find no reason to abandon such representations, now. In the case of *In re Wil-low Cafeterias, Inc.*, 111 F.2d 83 (2nd Cir.1940), the debtor had been continued in possession by a court order after it had commenced an action for reorganization. Subsequently, the debtor was adjudicated a bankrupt and the bankruptcy trustee attempted to disaffirm the certain subleases which the debtor as debtor-in-possession had affirmed. The court held that a debtor continued in possession by court order is a court officer analogous to a receiver or trustee. It rejected the contention that because the trustee had never affirmed the leases, but, on the contrary, had obtained an order of the referee purporting to authorize their disaffirmance, the subsequent purported assignment of them to a purchaser was ineffectual. The court stated,

> But it seems clear that what was ineffectual in the trustee's conduct was his attempt to disaffirm leases which the debtor in possession had validly adopted. By virtue of such adoption, the debtor in possession was an assignee of the subleases in relation to the landlord; the trustee succeeded to its rights as such assignee and had the same legal power to transfer the subleases as the debtor in possession had acquired by the lawful adoption of them. The order of liquidation did not initiate a new bankruptcy proceeding; it was merely an order in a proceeding begun in April, 1937, by the filing of the debtor's petition. With the court's approval, an officer of the court had affirmed the subleases; it is incredible that another officer subsequently appointed need reaffirm them or has any

power to disaffirm them, at least in the absence of some extraordinary circumstances.

*In re Wil-low Cafeterias, supra* 85–86. It follows that the action of the debtor in rejecting the lease in this case is as binding upon the Creditors' Agent as the debtor in possession's affirmance of the subleases in the case cited was binding upon the trustee in bankruptcy.

In a more recent case, *In re White Motor Corp.*, 44 B.R. 563 (N.D.Ohio 1984), the District Court held that the debtor's rejection of a pre-petition contract foreclosed contentions that a valid contract never existed between the debtor and creditor. That situation is strikingly similar to the one at hand as the confirmed *White Motor Corp.* plan of reorganization transferred all of the *White* estate assets to John T. Grigsvy, Jr., a "Disposition Assets Trustee." At contention was the validity of a claim arising from a pre-petition contract that was rejected by the debtor. The Disposition Assets Trustee, however, objected to the claim seeking to expunge it. The District Court noted that § 502(b)(1) permitted the Bankruptcy Court to disallow a claim to the extent that "such claim is unenforceable against the debtor and unenforceable against the property of the debtor, under any agreement or applicable law...." Section 365(g), however, provides that "the rejection of an executory contract ... constitutes a breach of such contract...." Accordingly, the District Court held:

> It is infinitely more sensible to hold that a breach is a breach—that once a debtor requests and receives a formal order of the Bankruptcy Court breaching a contract it may only challenge the resulting claim against the estate by raising those defenses which are not foreclosed by the judicial finding that the debtor failed to perform its obligations under the contract. Such a conclusion does not mean that § 365 creates an irrebutable presumption of a valid claim. Rather, it merely prevents a debtor from taking *logically* and *legally inconsistent* posi-

tions in order to deprive the other party to a valid contract of all rights deriving from that contract. By permitting the Trustee to raise defenses inconsistent with its prior finding that a valid contract was breached, the Bankruptcy Court skews the debtor-creditor balance of §§ 365 and 502 too far in the direction of the debtor, in violation of well-established principles of contract law. (emphasis added)

44 B.R. at 570.

Although different issues are at stake, such is the case here. Again, the debtor had represented the lease as burdensome and, as matter of sound business judgment, it should be terminated. The Creditors' Committee did not object, and the Court acted accordingly. To argue differently, in the absence of any misrepresentation, now, would be illogical and legally inconsistent and would destroy all finality to the Court's determinations. The Creditors' Agent was not misled to its disadvantage at the rejection hearing and is estopped from disavowing its actions or the debtor's actions at the rejection hearing.

In its memorandum, defendant thoroughly analyzed a series of cases applying the theories of waiver, laches, estoppel, and collateral estoppel. The Court need not repeat that analysis here—all would appear to be applicable. The plaintiff cannot show any damage caused the debtor by the January 8, 1984 amendment to the lease. The Motion for Judgment on the pleading of defendant/landlord, Saugus Realty Co. is allowed. Judgment for the defendant.