**Danny HILL, Plaintiff,**

**v.**

**ISS SECURITY SYSTEMS, INC. and Local 32B–32J, AFL–CIO, Defendants.**

**No. 86 Civ. 7892 (RWS).**

United States District Court, S.D. New York.

June 17, 1988.

Danny Hill, Jamaica, N.Y., pro se.

Manning, Raab, Dealy & Sturm, New York City (Lawrence H. Stone, of counsel), for defendants.

OPINION

SWEET, District Judge.

Defendant, Local 32B–32J, Service Employees International Union, AFL–CIO (the "Union"), has moved for summary judgment seeking dismissal of the complaint under Rule 56, Fed.R.Civ.P., of plaintiff Danny Hill ("Hill") appearing *pro se.*

Upon the following findings and conclusions, the motion is granted.

### Prior Proceedings

Hill commenced this action by filing a *pro se* summons and complaint on October 30, 1986 alleging a number of causes of action stemming from the Union's alleged failure to enforce certain provisions of the collective bargaining agreement with his employer, I.S.S. Security Systems ("ISS"). Discovery has been held. No proof of service upon ISS has been filed.

This motion was initially filed on May 6, 1987 and submission was deferred as an effort was made to obtain counsel for Hill. Failing that, the motion was submitted and argued on February 11, 1988. The complaint seeks the same relief which had been the subject of prior administrative proceedings.

### Facts

The Union is a labor organization which represents approximately 65,000 members primarily building service employees in the New York metropolitan area. It engages in a series of collective bargaining relationships with many employers that cover all the terms and conditions of employment at numerous locations throughout the metropolitan area.

Prudential Building Maintenance ("Prudential"), the parent company of ISS, is a member of the Service Employers Association ("SEA"), a multi-employer association. The Union and SEA have entered into various agreements including the SEA Security Contractors Agreement (the "Agreement") which is negotiated industry-wide and covers all terms and conditions of employment except those terms relating to economic benefits. The agreement stipulates, in Article I, that all economic terms including wages are to be set forth in riders and negotiated on a location basis.

Hill was employed as a security guard at the Jamaica Mall, 89–31 161st Street, Jamaica, New York in August of 1982 by Star Security Systems ("SSS"), a now defunct division of ISS Security Systems, Inc. ("ISS") which was a member of the SEA and a party to the Agreement.

Within thirty days of Hill's employment at this location, he became a member of the Union, the bargaining representative at the Jamaica Mall. Since the collective bargaining agreement states specifically, however, that wages and other economic benefits are to be set forth in riders negotiated for each location covered by this master agreement, economic terms were negotiated for the Mall. Pursuant to Article I, paragraph 3 of the Agreement, a rider was executed to cover the economic terms of employment at the Jamaica Mall, Hill's work location. The terms negotiated included a minimum wage of $3.70 per hour, vacation, schedules, holidays and health coverage for the employee.

Hill asked the Union for a copy of the contract for his location, specifying ISS as his employer without indicating his employment as a security guard. He was provided with the contract that covered ISS/Prudential cleaners and one that had no relation to his location or job classification. Hill was subsequently informed of this mistake.

Hill complained to the Union that he was not receiving the correct wages or health benefits based on the ISS/Prudential contract benefits. In 1985 Hill read in a Union newspaper that security guards were receiving a 50 cent per hour increase. The raise, however, did not apply to the agreement which covered Hill's employment.

On a number of occasions representatives of the Union and its counsel informed Hill that he was covered by an independent rider to the Agreement, copies of which were provided to him. Hill sought to file a grievance with the Union seeking the increased benefits to which he believed he was entitled. The grievance was denied for lack of merit.

Hill also filed several charges with the National Labor Relations Board ("NLRB") complaining of identical allegations as in the suit at bar during the period between 1983 and 1985. At the end of 1983 Hill filed a charge against the Union alleging a failure to represent him and a second charge against ISS for coercive activities. Both charges were later withdrawn. Subsequently in 1984 Hill filed two additional

charges against the Union for failing to process grievances. The NLRB dismissed both charges (both were denied on appeal) and in its written decision pointed out that Hill was employed pursuant to the SEA Security Contractors Agreement, that the raise alluded to by Hill applied to those guards covered under a different collective bargaining agreement and that the Union did not arbitrarily fail to process his grievances. The NLRB did rule that three of Hill's contentions were potentially actionable grievances against the employer and ripe for the grievance procedure. They were the failure to provide a bulletin board, the failure to elect a shop steward and an abbreviated lunch period. Based on the NLRB's decision, the Union did receive a grievance on these three potentially actionable claims against the employer.

However, in March of 1985 ISS lost the contract to provide security services at the Jamaica Mall and accordingly the Union lost the ability to enforce most of the provisions of the collective bargaining agreement since there was no collective bargaining agreement in existence with the new owner. Certain of the grievances filed by Hill were prospective in nature and were not pursued by the Union.

Another grievance arose, however, after ISS lost the contract to provide security services at the Jamaica Mall location. Under the SEA Agreement, any employee employed for more than one year and subsequently laid off shall have the right of recall within six months as well as certain transfer rights based on his/her seniority with the company. Hill filed a grievance pursuant to the Agreement alleging that the employer violated certain terms and conditions relating to transfer as well as charges at the NLRB against the Union and ISS claiming retaliation for his previous attempts to enforce the Agreement and failure by the Union to process grievances. Both charges were dismissed upon the Board's investigation.

The grievance machinery outlined in the Agreement is a multi-step procedure culminating in final and binding arbitration. There is an intermediate step know as a grievance committee meeting at which an attempt is made to resolve grievances short of arbitration. Hill attended such a grievance meeting along with the employer on July 1, 1985. At that meeting a written stipulation of settlement was proposed to Hill guaranteeing him a 40 hour per week job enjoying a wage rate equal to or higher than he was receiving. Hill rejected this settlement offer.

On May 22, 1986 a full hearing was held before Contract Arbitrator Burns Huttlinger. The issue for arbitration was whether the employer allowed Hill to exercise his right of recall and transfer in accordance with the contract. The employer presented a witness who testified and offered evidence on its behalf. The Union had the opportunity to cross-examine. Hill then had an opportunity to testify on his own behalf. An award was rendered on May 29, 1986 denying Hill's grievance.

Hill then brought suit, on June 18, 1986, against the Union and ISS by filing an action, identical to the case at bar, in the Civil Court of the City of New York, County of Queens. The case was dismissed when Hill failed to appear at the scheduled conference but was restored to the calendar upon his application. At the end of November Hill signed a letter drafted by the Clerk of the Court stating that he had no intention of pursuing his case in Civil Court. Notwithstanding, ISS moved the court for summary judgment which was granted by the court on February 26, 1987.

Hill did not contravene the Union's Local Rule 3(g) statement except to note that the Agreement and counsel for the Union denied the existence of pension coverage while the Union's 3(g) statement stated that the location rider contained a provision for pension benefits. On its face it did not. Hill has set forth no evidentiary basis for concluding the contrary.

In short, Hill's claims have been based on a series of misapprehensions without any documentary or other support.

### Conclusions

#### Summary Judgment

In considering a motion for summary judgment a court "is not to resolve dis-

puted issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Summary judgment should not be granted if there is a genuine issue of fact necessitating trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Moreover, if a case is "so one sided that one party must prevail as a matter of law," summary judgment will be granted. *Id.* at 2512.

*Statute of Limitations*

When a grievance issues from the employer's breach of a provision of the collective bargaining agreement, and the union fails to act on the claim, the employee's suit against the union for its failure to represent must be timely brought. *Delcostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), determined that the six month time period of § 10 of the NLRA to establish an unfair labor practice should be borrowed for an action alleging a breach of a union's duty to represent its members. This action was not begun, however, until October of 1986 and is now untimely as a matter of law for any failure of union representation other than claims arising out of the 1986 arbitration which was concluded on May 29, 1986. *See also Robinson v. Pan American World Airways*, 777 F.2d 84 (2d Cir.1985); *Welyczko v. U.S. Air*, 733 F.2d 239 (2d Cir.), *cert. denied,* 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984); *Assad v. Mount Sinai Hospital*, 725 F.2d 837 (2d Cir.1984).

*Elements of a Failure to Represent Claim*

To make out a cause of inadequate representation it must be alleged that the Union acted in bad faith, or discriminated against a member in a hostile manner. *See e.g., Simberlund v. Long Island Railroad Co.*, 421 F.2d 1219 (2d Cir.1970). Without this basic allegation the suit must fail.

The proper allegations in a failure to represent suit are set forth in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The litigant must allege and establish factually that the grievance procedure of the collective bargaining agreement was exhausted, or the member was prevented from utilizing the grievance procedure in some way through the Union's wrongful conduct. No allegations have been set forth sufficient to establish a claim that the Union has breached its duty of representation.

However, because Hill is *pro se*, it may be appropriate to consider his claim of the Union's breach of its duty of fair representation under 29 U.S.C. § 158 on the merits as it relates to the 1986 arbitration. No facts have been adduced, however, to establish that the Union breached that duty. The Union participated fully in the grievance proceedings, and the arbitration. Hill has failed to set forth any facts to establish a failure to represent him, to discriminate against him or to have acted in bad faith. *Wallace v. American Tel. and Tel. Co., Inc.*, 460 F.Supp. 755 (E.D.N.Y. 1978). Indeed, Hill never availed himself of an appeal to the Grievance Committee on those occasions when the Union concluded his grievances lacked merit.

Finally, no grounds have been set forth to compel review of the arbitrator's decision.

The steelworker Trilogy provides guidance for the scope of review courts are to follow in disputes arising under labor contracts that contain arbitration clauses. *See United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In *Enterprise Wheel & Car Corp.*, the Court stated:

the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's deci-

sion concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*Id.* at 599, 80 S.Ct. at 1362.

The Arbitration Act, 9 U.S.C. section 10, states in pertinent part:

In either of the following cases the United States Court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration ...

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators or either of them.

(c) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

No grounds have been set forth by Hill on which the arbitrator's award can be vacated. Settle judgment dismissing the complaint on notice.

IT IS SO ORDERED.