**In re ROXRUN ESTATES,
INC., Debtor.**

**Bankruptcy No. 86 B 12326 (TLB).**

United States Bankruptcy Court,
S.D. New York.

July 1, 1987.

---

.. 

Jordan & Walster, Roxbury, N.Y., by Herbert Jordan, for RR Village Ass'n, Inc.

Frank Taddeo, Jr., New York City, special counsel to the trustee.

Mark Lewis Brecker, New York City, for LGP Gem Ltd.

## DECISION AND ORDER ON MOTION FOR RELIEF FROM AUTOMATIC STAY

TINA L. BROZMAN, Bankruptcy Judge.

A townhouse village association which holds a prepetition judgment of foreclosure and sale against unimproved land which is property of the chapter 7 estate asks us to lift the automatic stay of section 362 of the Bankruptcy Code to allow enforcement of the judgment. The trustee opposes this relief and asks us, instead, to continue the automatic stay in effect but to allow motions concerning an appeal from the judgment in state court to proceed, in essence without requiring the debtor to post the supersedeas bond ordered by the state appellate court. In response to the cross-motion, the townhouse association suggested that we lift the stay for all purposes with respect to the pending litigation and foreclosure proceeding. The trustee urges that we should grant the more limited relief for a number of reasons, including that the "property is absolutely necessary for an effective reorganization ... [and] [t]hat the Trustee will promptly submit a feasible plan of reorganization...." Supplemental Memorandum of Law of the Trustee at page 12. The assertion of that defense, which is certainly curious in the context of a voluntary, chapter 7 liquidation, is typical of the quality of advocacy which has laced the trustee's efforts to oppose the motion to lift the stay.[1] An evidentiary hearing was conducted on June 16, 1987. At the close of the creditor's case, the trustee declined to adduce any evidence, resting instead on his counsel's cross-examination of the creditor's expert. For the reasons discussed below, we grant the motion to lift the stay for all purposes with respect to the litigation and foreclosure proceeding pending in the state courts.

### I.

Roxrun Estates, Inc. ("Roxrun") is the owner of 130 lots in a planned unit development which it acquired in 1982 from Roxbury Run Corporation. The deed recites that the land is subject to the Offering Statement and Declaration of Covenants, Conditions and Restrictions of Roxbury Run Village ("Declaration") dated August 10, 1972 and recorded on that same date. Article IV, section 1 of the Declaration provides that the owner of each plot of land in the development shall pay to RR Village

---

1. We are particularly concerned that counsel has been less than candid in reciting the facts. He states, for example, that the debtor prior to bankruptcy was besieged by its unsecured creditors. Inasmuch as this debtor has only a single unsecured creditor, LGP Gems, Ltd. ("LGP"), who happens to hold the debtor's only other secured debt and is owned by the debtor's sole shareholder, it ill behooves counsel to characterize this debtor as the typical one besieged by demands of its unsecured creditors. As the cover sheet to the bankruptcy petition makes clear, this debtor has only two creditors, secured or unsecured.

Association, Inc. ("RRVA") annual maintenance assessments, property tax assessments and any special assessments, which, "together with interest, costs and reasonable attorney's fees shall be a charge on the land and shall be a continuing lien upon the property against which each such assessment is made." Section 10 of the same article provides that RRVA may foreclose such liens where there are defaults "in a like manner as a mortgage lien on a real property" and grants to RRVA a power of sale in connection with such liens.

On May 2, 1985, RRVA instituted a foreclosure action against Roxrun in the Supreme Court of the State of New York based upon Roxrun's failure to pay maintenance assessments and special assessments for capital improvements which RRVA claimed were due. RRVA also filed on the same date a notice of pendency of the foreclosure action.

RRVA prevailed in the foreclosure action; on October 1, 1986, an order and judgment of foreclosure and sale was entered. The judgment awarded RRVA $169,230.99, plus interest computed at the 9% legal rate, plus additional assessments to become due between August 20, 1986 and the sale date. A sale was scheduled for December 8, 1986. Roxrun appealed and applied to the Appellate Division for a stay of the sale pending appeal. RRVA cross-appealed. On December 4, 1986, the Appellate Division issued a decision to consolidate the two appeals and to grant a stay conditioned upon the posting of a $100,000 undertaking.

Instead of posting the bond, Roxrun filed its voluntary, Chapter 7 petition several hours before the scheduled sale. In deference to the automatic stay, the referee adjourned the sale. As of the filing date, RRVA was due $178,111.99 in accordance with the terms of its judgment.

At about the same time as the bankruptcy petition was filed, RRVA moved to dismiss the appeals from the order and judgment of foreclosure.[2] By cross-motion dated December 16, 1986, Roxrun (and not the bankruptcy trustee), without leave of court, opposed that motion and asked the Appellate Division, among other things, to a) specify the contents of and financial responsibility for assembling the record on appeal b) reaffirm Roxrun's right to perfect all appeals c) declare that the requirement of the $100,000 undertaking was for the sole purpose of insuring that the value of the property would not be diminished during the appeal[3] and d) expand its order of consolidation. LGP also cross-moved in opposition to RRVA's motion and in support of Roxrun's cross-motion.

RRVA responded to these cross-motions with letters asking the Appellate Division to hold the cross-motions in abeyance pending the appointment of a bankruptcy trustee because the appeals were stayed by the bankruptcy. The Appellate Division concurred. In February, 1987 it ordered the appeals be held in abeyance even though the trustee (without seeking bankruptcy court approval) had asked the Appellate Division to consider RRVA's motion to dismiss the appeals and the two cross-motions.[4]

By motion filed May 6, 1987, RRVA moved this court for an order to permit execution of the judgment of foreclosure and sale, contending that the debtor had no equity in the property, that RRVA's interest was not adequately protected and that there was good cause to modify the stay. The good cause was alleged to be that the filing was made solely to obtain the benefit of the automatic stay, which obviated the need to post the $100,000 bond which the Appellate Division four days earlier had imposed. The motion was supported by affidavits and a variety of documents, in-

2. LGP had also appealed.

3. Roxrun's counsel, who is special counsel to the trustee here, represented to the Appellate Division that if the undertaking were so limited "Roxrun would then be in a position to withdraw its bankruptcy petition...."

4. RRVA had properly advised the Appellate Division that the appeals were stayed until this court issued an order annulling, modifying, terminating or vacating the automatic stay, even though the trustee had asked the Appellate Division to rule.

cluding an appraisal by one Perry White. RRVA submitted evidence that it was owed, in addition to the $178,111.99 prepetition amount, $17,221.62, (comprised of $6,009.12 in post-petition interest pursuant to the judgment and $11,212.50 in post-petition maintenance assessments) and $7,326.60 in unpaid and overdue real estate taxes. None of these calculations were controverted by the trustee. The trustee opposed the motion and cross-moved to lift the stay for the limited purposes of allowing the Appellate Division to determine RRVA's motion to dismiss the appeals and Roxrun's and LGP's cross-motions. The trustee contended that Roxrun has "potentially great equity" in the land because "an efficient developer could [conceivably] realize a profit margin of 5–10% ..." (Affirmation of Frank Taddeo, Esq. dated May 25, 1987 at ¶ 20). The trustee also contended that the bankruptcy filing was not improper. Nowhere in his initial opposition did the trustee urge that RRVA was adequately protected.

The motions to lift the stay were first heard on June 2, 1987. During oral argument, the trustee's special counsel contended, for the first time, that RRVA's judgment of foreclosure constituted a voidable preference which the trustee would eventually seek to set aside. Because the trustee challenged the validity of RRVA's appraisal and because RRVA's counsel did not have his appraiser present to testify, RRVA consented to a continuation of the automatic stay to allow it to bring in its appraiser.[5] A valuation hearing was set for June 16, 1987, with the understanding that no adjournments would be granted. RRVA consented to a limited modification of the automatic stay to permit the Appellate Division to rule prior to the valuation hearing on one prong of Roxrun's motion, namely, the request that the Appellate Division limit the purpose of the $100,000 bond. The Appellate Division did rule, denying Roxrun's motion and refusing to modify its order. Roxrun's "backer," Isaac

Pollak, who is the sole shareholder of both Roxrun and LGP, refused to post the bond.

On June 16, 1987, notwithstanding that RRVA's motion was made some six weeks earlier and that the trustee was specifically advised on June 2 that no further adjournments would be granted, the trustee asked this court to "commence" the valuation hearing that day and then "continue" it for several weeks to allow the trustee to retain an appraiser. The application was denied, the court noting that the trustee had had ample time since the motion was made to prepare his case. The evidentiary hearing was conducted, RRVA calling Mr. White and the trustee calling no witnesses.[6]

Perry White, a 23 year resident of Roxbury, New York, the town in which Roxrun's land is located, is a real estate salesperson and branch manager of a real estate office in Roxbury. He is also the owner of a real estate consulting business, a member of the Delaware County Planning Board and a former chairman of the Town of Roxbury Planning Board. He has several years' experience in the sale of unimproved property in Roxbury and has performed for a fee many appraisals of land, improved and unimproved, in the Roxbury area, including improved sites in the development of which Roxrun's property is a part. In preparing his appraisal of Roxrun's land he visited Roxrun's property once for an extended period of time and visited comparable sites as well. The court found Mr. White to be a particularly articulate and credible witness.

Roxbury is a town of 2,500 people located in a rural, mountainous area of Delaware County. Much of its land is or was farmed. The town contains two hamlets of higher density. One of these hamlets is the Roxbury hamlet, where Roxrun's property is located.

Roxrun's lots, which constitute 29.8 acres, are adjacent to Roxbury Run Village. The Roxrun property is essentially

---

5. The court permitted LGP to effectively intervene and appear in opposition to RRVA's motion and in support of the trustee's cross-motion.

6. Counsel for the trustee and RRVA both requested the opportunity to submit post-trial briefs, which request was granted, but on an expedited schedule.

unimproved, except for a road system, and is relatively level. Roxbury Run Village is the only existing townhouse and/or condominium project in the Town of Roxbury. It contains well in excess of 100 units.

■ In making his appraisal, Mr. White utilized fair market value. To arrive at the fair market value he utilized a comparable market data analysis, that is, he looked for properties essentially similar to the Roxrun property that have been sold within the past 12 months and compared the value of those properties with Roxrun's property using necessary adjustments. The most comparable sales which Mr. White found were those of a small group of residential lots overlooking the Kass Inn golf course. These ranged in sales price from $4,400 per acre to $5,900 per acre. Mr. White found that the Roxrun property was worth the highest amount per acre that the Kass Inn property sold for, namely, $5,900 per acre, for a total of $175,820. Although the trustee and LGP argue that the Roxrun property is more valuable because the Roxrun lots carry rights to use a swimming pool and tennis courts, the owners of the Kass Inn lots may use the golf course and tennis courts (for a fee). No testimony was adduced suggesting that any small difference in available amenities would affect the sales price of otherwise comparable lots and, therefore, the accuracy of the appraisal.[7]

## II.

Bankruptcy Code section 362(d) provides that upon request of a party in interest, the court *shall* grant relief from the automatic stay

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section if—

(a) the debtor does not have an equity in such property; and

(b) such property is not necessary to an effective reorganization.

The party moving for relief from the stay carries the burden of proof on the issue of the debtor's equity in the subject property while the party opposing such relief bears the burden of proof on all other issues. 11 U.S.C. § 362(g).

■ Through proving that the liens on Roxrun's property exceed the property's worth, RRVA has demonstrated that Roxrun lacks equity in the property. RRVA has submitted uncontroverted evidence that it was owed in excess of $178,000 pre-petition and at least another $18,000 in unpaid post-petition maintenance assessments and unpaid real estate taxes. Further, LGP holds a secured claim for $400,-000.[8] Thus, total liens are in the approximate amount of at least $596,000.[9]

The amount of the liens far exceeds Mr. White's appraisal of the property, which was $175,820.[10] We find no reason to quarrel with this valuation. Through his testimony, Mr. White demonstrated that he conducted a thorough appraisal, the details of

---

**7.** Arguably, the Kass Inn land could be more attractive to a purchaser than Roxrun's. At Roxbury Run Village, all purchasers are assessed fees for the construction, maintenance and operation of the common facilities. At Kass Inn, fees are paid only for the use of the facilities. To some purchasers, this might be a preferable arrangement. We decline to speculate about whether one system makes the land more valuable than the other. Inasmuch as the amenities available are roughly comparable, we see no reason to criticize the appraiser's analysis or his use of the Kass Inn property as the most comparable property available.

**8.** The debtor's bankruptcy petition lists secured claims in favor of LGP in amounts of $360,000 and $400,000. The schedules annexed to the

petition state that LGP has a 1982 mortgage of $360,000 and that it later obtained a judgment in the amount of $400,000 based upon that lien. The trustee did not indicate any dispute concerning the validity of that $400,000 lien.

**9.** In determining equity for purposes of 11 U.S.C. § 362(d), all liens secured by the property in question should be considered. *See Pistole v. Mellor (In re Mellor )*, 734 F.2d 1396, 1400 n. 2 (9th Cir.1984); 2 L. King, Collier on Bankruptcy ¶ 362.07 at 362–60 (15th ed. 1987); M. Bienenstock, Bankruptcy Reorganization at 135 (1987).

**10.** Mr. White said that this figure should be adjusted by a 1% increase per month so that as of the time that he was testifying, the value of the property was 2% higher, or $179,336.

which we described above. *See* part I *supra.* Also evident from Mr. White's testimony was his excellent knowledge of the subject matter.

Faced with this credible appraisal, the trustee came forward with no competing appraisal but instead sought only to discredit White's testimony and appraisal through cross-examination. Regrettably for the trustee that cross-examination served only to convince this court of the strength of the White appraisal. Further, we note that Roxrun itself stated on schedule B to its Voluntary Chapter 7 Petition that the property had a market value of $100,000. The bankruptcy petition was signed by Mr. Pollak yet he never testified as to why that $100,000 figure which he put in the schedules was incorrect. Accordingly we find overwhelming evidence that Roxrun lacks equity in the property.[11]

■ The lack of equity is not dispositive on a request to lift the stay because the debtor may resist such relief if it can prove that the property is necessary for an effective reorganization. 11 U.S.C. § 362(d); *In re Saint Peter's School*, 16 B.R. 404, 409 (Bankr.S.D.N.Y.1982). The trustee and LGP strenuously urge that the property is indeed necessary to reorganize, that LGP is more than amenable to a "workable rehabilitation plan" and that it need only show a "reasonable likelihood" that Roxrun will be able to propose a plan resulting in a successful reorganization. But Roxrun is not attempting to reorganize, it is voluntarily liquidating. Thus there can be no question that the property is not necessary for an effective reorganization. The courts and commentators agree that in a chapter 7 case, where the debtor has no equity in the property, the automatic stay must be lifted. *Rusiski v. Pribonic (In re Pribonic)*, 16 C.B.C.2d 626, 639, 70 B.R. 596 (Bankr.W.D.Penn.1987). *See generally* B. Weintraub & A. Resnick, Bankruptcy Law Manual ¶ 1.09[8] at 1–46 (1986); *Sovran Bank, N.A. v. Anderson*, 743 F.2d 223, 225 n. 1 (4th Cir.1984).[12]

■ Also unconvincing are several other defenses raised by the trustee in his effort to resist lifting the automatic stay. First, it is argued that RRVA was required to commence an adversary proceeding rather than proceed, as it did, by motion. A quick look at the Federal Rules of Bankruptcy Procedure would have instructed the trustee's counsel that relief from the automatic stay is accomplished through a motion. *See* Fed.R.Bankr.P. 4001, 4004, 7001.

■ Equally unpersuasive is the argument that RRVA is not a party in interest entitled to seek relief from the stay.[13] We cannot conceive how a secured creditor could be anything other than a party in interest for purposes of section 362. The argument that RRVA is not a party in interest because it has not filed a claim is ludicrous not only because the creditor did file a claim, but because RRVA was scheduled as a secured creditor by the debtor.

■ It is also argued that RRVA is not entitled to relief from the stay because the trustee is intending to bring a preference action to set aside the order and judgment of foreclosure.[14] The theory is that the judgment is voidable because it was entered within ninety days of the filing of Roxrun's petition. Although it is not ap-

---

**11.** We are not convinced by the trustee's argument that Roxrun has potentially great equity in the land because if a developer invested money to build townhouses on the property he might realize a profit. We are necessarily concerned with whether this debtor has current equity in the property. Moreover, the trustee's assertion was not backed up by any evidence; in fact, Mr. White testified that, in his opinion, development of the property at this point in time might no longer be profitable.

**12.** We are mindful that property may be necessary for an effective reorganization even if the estate is being liquidated if that liquidation is occurring in the context of a chapter 11 case, for a liquidating plan is permissible in chapter 11. 11 U.S.C. § 1123. But to confirm a liquidating plan the debtor must be able to satisfy certain administrative and priority indebtedness which it need not do in chapter 7. Thus, there is a substantial difference between the two kinds of liquidation.

**13.** 11 U.S.C. § 362(d) refers to a "party in interest" making the request for relief from the stay.

**14.** After the close of the record on this matter, the trustee instituted such an action.

propriate on a motion to lift the stay to adjudicate whether a secured party's lien is voidable as a preference, it is appropriate to consider the alleged voidability of that lien. *See* B. Weintraub & A. Resnick, Bankruptcy Law Manual at 911.09[8] n. 88 (Supp.1986); *Cheshire County Savings Bank v. Pappas, (In re Pappas)*, 55 B.R. 658, 661 (Bankr.D.Mass.1985). *See also Johnson v. Righetti, (In re Johnson)*, 756 F.2d 738, 740 (9th Cir.), *cert. denied*, 475 U.S. ——, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985).

■ Without analyzing all the elements necessary for the trustee to prove a preference, we do not see how setting aside the judgment and order of foreclosure would alter RRVA's position as a secured creditor in this bankruptcy. The lien it holds *does not arise from the judgment of foreclosure* but rather is occasioned by the operation of the provision of the Declaration which states that all assessments, interest, costs, and fees "shall be a charge on the land and shall be a continuing lien upon the property against which such assessment is made." Declaration at Art. IV, § 1. *See Colonial Financial Corporation v. Nelson*, 148 Misc. 55, 264 N.Y.S. 139 (Nassau Cty.Ct.1933) (upholding as against first mortgagee lien created by agreement between lot owner and development association which lien arose from annual assessments); *see also Fiore v. Smith*, 96 N.Y. S.2d 610 (Sup.Ct.Queens Cty.1950) (parties may by agreement establish a lien); *Herzog v. Birmingham Fire Insurance Company (In re D.H. Overmyer Co., Inc.)*, 19 B.R. 750, 758 (Bankr.S.D.N.Y.1982). The Declaration cannot be clearer as to this point. The foreclosure action was only a means to enforce an already existing lien. Article IV, section 10 of the Declaration, which deals with remedies of RRVA for

nonpayment of assessments, includes the right of RRVA to "foreclose the lien against the Townhouse Unit." Obviously, foreclosure presupposes a valid lien and the judgment of foreclosure thereby implicitly constitutes a finding that RRVA had a valid and subsisting lien. Thus the trustee's attempt to characterize the lien as a judicial lien arising out of the docketing of a money judgment pursuant to N.Y.C.P. L.R. 5203(a) is simply wrong. Accordingly, even assuming that the judgment and order of foreclosure were set aside as a preference pursuant to 11 U.S.C. section 547, the lien arising from the assessments would survive.

■ But we do not believe that the judgment could be set aside as a preference precisely because RRVA obtained no priority over general unsecured creditors by virtue of the judgment. One leading bankruptcy commentator has addressed this issue in the context of a preference action, succinctly stating:

> Section 547, however, is concerned primarily with judgments or judicial proceedings that create liens within the preference reach back period to secure claims that previously had no preferential standing. Accordingly, a judgment entered within the preference reach back period and arising out of the enforcement of a valid and subsisting lien, which has priority over claims of general creditors and against which the trustee cannot assert a paramount right, does not constitute an avoidable preference.

4 L. King, Collier on Bankruptcy ¶ 547.03 at 547–19 (15th ed. 1987) (footnote omitted).

■ Having found that the debtor lacks equity in the property and that it is not necessary for an effective reorganization, we must lift the automatic stay.[15] We

---

15. The trustee's argument that RRVA is adequately protected is first presented to this court in the trustee's post-hearing memorandum and comes too late in the day. In any event, it is the trustee who would bear the burden of proof on such an issue, 11 U.S.C. § 362(g), and clearly he has failed to meet that burden. *See* Post-Hearing Memorandum of RRVA filed June 23, 1987 at 13–14. Further, we do not have to reach the question of adequate protection because the

creditor has fulfilled the two-pronged test under section 362(d)(2), which is not derived from the concept of adequate protection. "[T]he import of that test is that if the debtor lacks equity in property and does not need it to reorganize, then the stay is unjustified. Restraining creditors from enforcing their rights is strong medicine. The Bankruptcy Code does not sanction the stay for the stay's sake." M. Bienenstock, Bankruptcy Reorganization at 135 (1987).

do not, however, believe it appropriate to lift the automatic stay for the single purpose of foreclosure. To protect whatever ability, if any, the trustee may have to overturn the judgment of foreclosure, we lift the automatic stay to allow continuation of the foreclosure action and all the state court litigation respecting the propriety of that judgment.

IT IS SO ORDERED.