In re HOOKER INVESTMENTS, INC.; L.J. Hooker Corporation, Inc. et al., Debtors.

In re L.J. HOOKER INTERNATIONAL FLORIDA, INC., Debtor.

L.J. HOOKER INTERNATIONAL FLORIDA, INC., Plaintiff,

v.

Maurice GELINA and Maurice Gelina & Associates, Inc., Defendants.

Bankruptcy Nos. 89 B 11986 (TLB), 89 B 12000 (TLB), 89 B 12199 (TLB), 89 B 12398 (TLB), 89 B 12696 (TLB), 89 B 12741 (TLB), 89 B 13337 (TLB), 89 B 13340 (TLB), 90 B 10058 (TLB), 90 B 10374 (TLB), 90 B 10395 (TLB), 90 B 10675 (TLB) and 90 B 10733 (TLB). Adv. No. 90–5711–A.

United States Bankruptcy Court, S.D. New York.

Sept. 11, 1991.

Gendel Raskoff Shapiro & Quittner by Howard J. Steinberg and Hydee R. Feldstein, Los Angeles, Cal., for L.J. Hooker Intern. Florida, Inc.

Proskauer Rose Goetz & Mendelsohn by Michael E. Foreman, New York City, for L.J. Hooker Inv., Inc. and L.J. Hooker Corp., Inc., et al.

Fulbright Jaworski & Reavis McGrath by William J. Rochelle, III, and David A. Rosenzweig, New York City, for Maurice Gelina and Maurice Gelina & Associates, Inc.

## DECISION ON MOTION FOR SUMMARY JUDGMENT

TINA L. BROZMAN, Bankruptcy Judge.

### I.

We are beset with the next skirmish in the litigants' battle over commissions earned from the debtor's now defunct real estate brokerage operation.[1] This dispute

---

1. Earlier I found that the Defendants' counsel violated the automatic stay by his post-petition substitution of Gelina as party plaintiff in one action pending in the Florida courts and by his filing of a similar motion in a second action. *In re Hooker Investments,* 116 B.R. 375 (Bankr. S.D.N.Y.1990). Before the trial on damages pursuant to 11 U.S.C. § 362(h) occurred, the

centers on the effect to be given an order rejecting the contract which governed the relations of the parties. L.J. Hooker International Florida, Inc. (Hooker Florida or the Debtor), a part of the real estate arm of L.J. Hooker Corporation, Inc., was a real estate and mortgage broker maintaining offices in Tampa, Orlando and Miami, Florida. Maurice Gelina, a real estate broker, was the manager of the Debtor's Miami office.

In July, 1989, the Debtor, Gelina and Maurice Gelina & Associates, Inc. ("Associates"), a newly formed corporation to be wholly owned by Gelina, entered into a certain Employment and Co–Brokerage Agreement (the "1989 Agreement") pursuant to which Hooker Florida assigned to Gelina 67% of the commissions earned as of the agreement date. Commissions were to be paid directly to Gelina who would remit 33% of each one back to the Debtor. Future transactions were to be handled in a similar fashion but through Associates rather than Gelina, with Associates retaining 67% of the commissions which it collected and remitting the remaining 33% to the Debtor.

Hooker Florida filed its Chapter 11 petition on February 8, 1990. Approximately five days later, the Debtor brought a motion (the Rejection Motion), under § 365 of the Bankruptcy Code, 11 U.S.C. § 365 (the Code), requesting authority to reject the 1989 Agreement. At hearings held on March 7 and 8, 1990, the Debtor and Gelina agreed to the terms of an order for the rejection of the agreement. On March 23, 1990, I signed an order (the Rejection Order) embodying the parties' agreement which made the rejection effective as of March 7, 1990. On March 26, the Debtor commenced an adversary proceeding against Gelina and Associates (collectively, the Defendants) seeking, among other things,[2] to avoid the 1989 Agreement as a preference or a fraudulent conveyance under §§ 547 and 548 of the Code. This sequence of events is significant, for it is the Defendants' contention that the Debtor, having first rejected the 1989 Agreement, is now precluded from seeking to set it aside. The Defendants move for summary judgment dismissing the Debtor's complaint in its entirety.[3] They argue that under a number of theories the Debtor should be "barred and estopped" from pursuing the claims raised in the adversary proceeding. Chief among these theories is the Defendants' assertion that the Debtor should have raised its claims prior to the entry of the Rejection Order, which order, the Defendants maintain, operates through res judicata to bar the subsequent pursuit for relief. Using a like analysis, the Defendants alternatively posit that collateral or judicial estoppel mandate judgment in their favor.

## II.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable to the motion by Fed.R.Bankr.P. 7056, summary judgment must be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Summary judgment is not regarded "as a disfavored procedural shortcut," but rather as a part of the federal procedural scheme designed to "secure the

---

Second Circuit Court of Appeals declared, in a split with the Third and Fourth Circuits, that that remedy is available only to an individual, rather than a corporate, debtor, *In re Chateaugay Corp.*, 920 F.2d 183 (2d Cir.1990). Accordingly, at the damages trial, I denied relief to the Debtor.

**2.** The Debtor's complaint asserts a variety of theories other than simply preference or fraudulent conveyance. The motion for summary judgment does not discuss the viability of any of these other theories, suggesting only in a global fashion that res judicata applies to any theory inconsistent with a finding that the rejected

1989 agreement was valid. Because I have determined that the Rejection Order does not have the type of preclusive effect urged by Defendants, it is unnecessary to address the other causes of action which Defendants themselves did not address.

**3.** In their motion papers, the Defendants also sought partial summary judgment on the counterclaims raised in their answer, which seek to declare the 1989 agreement valid and to enjoin the Debtor from collecting the commissions. The parties have since agreed, however, to defer seeking an adjudication on the counterclaims.

just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Summary judgment should be denied only where the facts in dispute will affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering the motion for summary judgment, the court must draw all ambiguities and reasonable inferences in favor of the nonmoving party. *National Union Fire Insurance Company v. Turtur,* 892 F.2d 199 (2d Cir.1989); *Lund's, Inc. v. Chemical Bank,* 870 F.2d 840, 844 (2d Cir.1989); *Knight v. U.S. Fire Insurance Company,* 804 F.2d 9, 10–12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The parties are agreed that no material factual disputes exist for purposes of this motion.

### III.

■ Under the doctrine of res judicata or claim preclusion, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). The purpose of the doctrine is to relieve parties of the cost and vexation of repetitious lawsuits, conserve judicial resources and promote the certainty of judicial determinations. *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1947). To achieve its purpose, res judicata binds the parties " 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' " *Id.* at 597, 68 S.Ct. at 719 (citations omitted); *accord, Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1980). Recognized as a rule of fundamental justice to "be cordially regarded and enforced by the courts," *Moi-*

*tie,* 452 U.S. at 401, 101 S.Ct. at 2429, res judicata nevertheless must not be woodenly applied; rather the court must give careful consideration to the case at hand before erecting the doctrine's preclusive bar. *Brown v. Felsen,* 442 U.S. 127, 132, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979); *see also Bin Saud v. Bank of New York,* 734 F.Supp. 628, 632 (S.D.N.Y.1990), *aff'd,* 929 F.2d 916 (2d Cir.1991).

Accordingly, courts in the Second Circuit will apply the doctrine only if the earlier decision was: a final judgment on the merits; by a court of competent jurisdiction; in a case involving the same parties or their privies; and premised on the same cause of action. *Anaconda–Ericson Inc., v. Hessen (In re Teltronics Services, Inc.),* 762 F.2d 185, 190 (2d Cir.1985); *N.L.R.B. v. United Technologies, Inc.,* 706 F.2d 1254, 1259 (2d Cir.1983). Here, the parties agree as to the competency of the court and the identity of the parties. One of the areas where they diverge, however, is whether the adversary proceeding involves the same cause of action as that decided in the Rejection Motion.[4]

■ The mere circumstance that two suits share a number of common, operative facts is by itself insufficient to warrant the court's finding of an identity of claims. *N.L.R.B. v. United Technologies,* 706 F.2d at 1259–60; *Shamrock Assoc. v. Sloane,* 738 F.Supp. 109, 117 (S.D.N.Y.1990).. Rather, the court must consider additional related factors, including whether the same transaction or a connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first. *Prime Management Co., v. Steinegger,* 904 F.2d 811, 816 (2d Cir.1990). Another factor considered by the courts is " 'whether the judgment in the second action would impair or destroy rights or interests established in the first.' " *Sure–Snap Corp. v. Gradford Nat'l Bank,* 128 B.R. 885 (D.Vt.1991) *quoting Herendeen v. Champion Int'l Corp.,*

---

**4.** The Debtor also asserts that the Rejection Order is not a final one which would trigger res judicata. Because, as I will explain, I find that this adversary proceeding does not involve the same cause of action previously decided, I need not reach the issue of finality.

525 F.2d 130, 133 (2d Cir.1975); *accord, Lopez v. Ward,* 681 F.Supp. 192, 196 (S.D.N.Y.1988). No one factor is dispositive; the determination must be made on a case by case basis "[f]or it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." *Expert Electric, Inc. v. Levine,* 554 F.2d 1227, 1234 (2d Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977); *G & T Terminal Packaging Co. v. Consolidated R. Corp.,* 719 F.Supp. 153, 158 (S.D.N.Y.1989).

Several cases illustrate this nicely. In *Theriault v. Religious Office in the Structure of the Government,* 895 F.2d 104 (2d Cir.1990), plaintiff brought an action alleging that chaplains in the federal prison system were exercising nonreligious power in violation of both the establishment clause and the religious test clause of the United States Constitution. In a separate, prior suit, the same plaintiff unsuccessfully challenged under the establishment and free exercise clauses the use of federal funds to employ the chaplains. The court found that the allegations raised in the second suit were distinct from those brought in the earlier suit, notwithstanding the court's assumption that the protections of the religious test clause are coextensive with those of the establishment and free exercise clauses. *Id.* at 106. Similarly, in *Nat'l Assoc. of Pharmaceutical Mfrs. v. Dep't of Health and Human Services,* 586 F.Supp. 740 (S.D.N.Y.1984), the court refused to apply res judicata to a trade organization's challenges to the content and scope of certain substantive regulations promulgated by the Food and Drug Administration (FDA), despite the organization's unsuccessful earlier suit contesting the FDA's authority to issue the regulations. The court noted that although in some sense the facts and evidence in both suits were the same, the inquiry needed to resolve the current claims was "nevertheless quite different" in that the prior suit dealt generally with the authority to promulgate while the pending action required a more specific analysis of the content of each regulation. Because the second suit involved a different cause of action, the court did not believe that the trade group was compelled to advance all its challenges to the validity of the regulations at the prior hearing, although presumably it could have done so. *Id.* at 747 n. 8.[5] In *Bridge C.A.T. Scan Assoc. v. Ohio–Nuclear, Inc.,* 608 F.Supp. 1187 (S.D.N.Y.1985) the court held distinct those causes of action in an employer's first suit against an employee for allegedly stealing and disseminating trade secrets for the purpose of injuring the employer's reputation from those in a second suit commenced by the employer against the same employee for, among other things, tortious interference with business relations and trade libel. Although the two suits certainly alleged some common facts, the underlying factual predicate and the evidence needed to prevail in the second suit differed from that in the first. *See Alpert's Newspaper Delivery Inc., v. The New York Times Co.,* 876 F.2d 266, 271 (2d Cir.1989) (res judicata no bar to second suit where plaintiff may not have had opportunity in prior suit to complete discovery and introduce necessary evidence to show possible disparate impact of alleged monopoly).

The Defendants maintain that the Debtor, having previously obtained the Rejection Order, is precluded from seeking to void the contract through the pending adversary proceeding. Their theory is that pursuant to § 365(g)(1) of the Code,[6] a court order approving the rejection of an executory contract not only constitutes a

---

**5.** Indeed, during the first action the trade group informed the *Pharmaceutical* court that it would amend its complaint to assert some of the same claims brought in the second action although it never followed through on the amendment. The court found nothing precluded the assertion of the separate cause of action in a subsequent suit rather than in an amended pleading. 586 F.Supp. at 748 n. 12. *See also Board of Ed. v. Hufstedler,* 641 F.2d 68, 71 (2d Cir.1981) (res judicata does not apply even though separate causes of action *may* be joined in same suit).

**6.** Section 365(g)(1) provides in pertinent part that the rejection of an executory contract constitutes a breach immediately before the date of the filing of the petition.

judgment that the debtor breached the contract as of the date immediately prior to the filing of the petition but affirms the validity of the contract that was breached. Thus, they argue, the Debtor is no longer able to avoid the 1989 Agreement. To be sure, a court cannot authorize rejection if there is no contract, such as if the contract has been fully performed or has terminated.[7] But Defendants, erroneously in my view, liken a contract which is voidable to a contract which is void. In other words, they urge that the court cannot find that the contract is voidable once it has found that there is a contract. It is in this point that their argument is fundamentally flawed for in granting rejection a court decides that there is a contract and that it would benefit the estate to reject it. The court does not consider whether there exist facts which would render the contract, if it constitutes a transfer, voidable. Moreover, in the Defendants' view, the rejection of the 1989 Agreement is tantamount to the Debtor's having sued for breach of contract, having lost that action, and instead having been found to be the breaching party. It is as though, the Defendants argue, the Debtor elected to unsuccessfully seek damages for Defendants' breach and now seeks to pursue the inconsistent remedy of having the 1989 Agreement rescinded. To support its position, the Defendants rely predominantly on two decisions, *Mazirow v. Grigsby (In re White Motor Corp.)*, 44 B.R. 563 (N.D.Ohio 1984) and *Richmond v. Finard (In re Fashion World, Inc.)*, 49 B.R. 690 (Bankr.D.Mass.1988) in which both courts barred subsequent actions involving previously rejected executory contracts. But neither case really requires nor supports the result which Defendants here request, as will be discussed.

■ That the 1989 Agreement underlies both the Rejection Motion and the adversary proceeding is not enough to find identity, nor is the fact that the Debtor could have brought both suits together conclu-

sive. *See N.L.R.B. v. United Technologies*, 706 F.2d at 1259–60; *Board of Ed. v. Hufstedler*, 641 F.2d 68, 71 (2d Cir.1981). Different showings must be made to support the respective proceedings. The standard to determine whether to approve a motion to reject under § 365 of the Code is the so called business judgment test, which requires a showing that the rejection of a contract would benefit the estate. *See, e.g., Control Data Corp. v. Zelman (In re Minges)*, 602 F.2d 38, 43 (2d Cir.1979); *In re O.P.M. Leasing Services, Inc.*, 79 B.R. 161 (S.D.N.Y.1987); *In re Meehan*, 46 B.R. 96 (Bankr.E.D.N.Y.1985), *aff'd, Bregman v. Meehan (In re Meehan)*, 59 B.R. 380 (E.D.N.Y.1986). One of the issues to be decided in the adversary proceeding is whether the transfer of the rights under the 1989 Agreement was preferential, which under § 547 of the Code requires, among other things, a showing that at the time the transfer was made, the Debtor was insolvent and that the Defendants were "insiders" as that term is defined in the Code. Another theory raised in the complaint is that the transfer constituted a fraudulent conveyance under § 548, which requires, among other things, that the transfer was either made with the intent to hinder, delay or defraud creditors or that the Debtor received less than a reasonably equivalent value in the exchange. The difference between the facts required to support the Rejection Motion and the theories in the adversary proceeding is evident, as a contract can be burdensome without being either preferential or fraudulent. *Cf. Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir.), *cert. denied*, ── U.S. ──, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990) (although addressing the issue as one of finality, circuit court refused to apply res judicata where bankruptcy court, in entering order approving settlement, "consider[ed] many factors other than the merits" of the underlying dispute).

---

7. So great is the need to insulate an estate from future liability that in those instances where it is unclear whether a contract subsists, the court will typically permit rejection to the extent that the contract is executory, reserving until the creditor's damage claim is considered the more complex issues which would derail an expeditious rejection.

■ An unfavorable judgment in the adversary proceeding would not impair any rights that the Rejection Order afforded the Defendants. While § 365(g) allows the nondebtor party the right to file a prepetition claim, that section does not give rise to an irrebuttable presumption that the claim is valid. *See In re White Motor*, 44 B.R. at 570. Rather, the rejection claim is subject to disallowance under §§ 502(g) and 502(b)(1) to the extent that it is unenforceable against property of the debtor. As discussed in greater detail below, I do not believe that this reading of § 502 renders meaningless the breach which is statutorily imposed.

■ I disagree with the Defendants' argument that the Debtor is pursuing inconsistent remedies by first rejecting the 1989 Agreement and subsequently attempting to set it aside in the adversary proceeding. The error in the Defendants' argument is in equating a rejection motion with an unsuccessful action by a debtor for damages allegedly occasioned by the nondebtor's breach of contract. In seeking authorization to reject a contract, a debtor asks only for a judicial declaration that it be relieved of future obligations to perform the burdensome contract. The legal fiction which results is that the breach occurred prior to bankruptcy as a result of which the nondebtor party becomes entitled to seek, as a general, unsecured creditor, damages caused by the debtor's breach.

In *White Motor*, the debtor's rejection of an executory contract prompted a creditor to file a proof of claim, to which the debtor in turn objected. Thereafter, the bankruptcy court denied both the creditor's motion to strike the objection as well as his subsequent summary judgment motion, concluding that neither the doctrine of res judicata nor § 365(g) precluded the debtor or the subsequently appointed trustee from objecting to the claim on the basis of the creditor's alleged breach of contract. The district court reversed. Whereas the reviewing court plainly saw that § 502(b)(1), which allows a bankruptcy court to disallow any claim that is unenforceable against the property of the debtor, calls into play the validity, amount or priority of a rejection claim, the court refused to construe § 502(b)(1) so expansively as to read out of § 365(g) the statutory breach the debtor is deemed to have committed upon rejection. It held that the debtor, having rejected and thus breached the contract under § 365, could not oppose the resulting damage claim on the grounds that it was the nondebtor party who had breached the agreement. It explained that a debtor could not recognize the validity of a contract for purposes of rejecting it and then raise defenses wholly inconsistent with a finding under § 365 that a contract existed and was breached in the ordinary sense of that word.

Seizing on *White Motor's* several references to a rejected contract as "valid," the Defendants insist that the Debtor cannot now challenge the validity of the 1989 Agreement by setting it aside as a preference or fraudulent transfer. Defendants' reading of *White Motor* is far too broad, for *White Motor* simply prevents a debtor from doing an about-face and claiming that no contract ever existed or that the nondebtor party was the breaching one when the debtor, by rejecting the contract, already has been deemed to have been the breaching party. But the *White Motor* court was not confronted with an attempt to avoid the rejected contract. Indeed, *White Motor* expressly recognizes that subsequent to rejection, defenses to the claim may be brought so long as they are "not foreclosed by the judicial finding that the debtor failed to perform its obligations under the contract." 44 B.R. at 570. Here, the Debtor does not assert that it was the Defendants who failed to perform under the 1989 Agreement. Performance under the 1989 Agreement is not in issue, nor is the existence of the contract; rather, the claim is that the contract should be set aside as a voidable transfer of property of the debtor. In sum, nothing in the relief requested in the adversary proceeding either emasculates or is at war with a finding under § 365(g) that it was the Debtor which breached the 1989 Agreement. The Debtor's complaint is completely consistent with its rights under § 502 to challenge the

nondebtor party's ability to recover from the estate.

The decision in *Fashion World*, which read *White Motor* to hold that a debtor's rejection of an executory contract "foreclose[s] contentions that a valid contract never existed between the debtor and creditor", is likewise distinguishable. 49 B.R. at 693. In *Fashion World*, the debtor entered into a prepetition agreement with its landlord to modify a lease, essentially changing it from a tenancy for a term of ten years to a tenancy at will. After filing the petition, the debtor, without objection from its creditors' committee, which knew of the modification, rejected the "ten year" lease on the grounds that it was burdensome and worthless to the estate. No mention was made of the modification of the lease to one at will. Subsequent to the confirmation of the debtor's plan of reorganization, the committee brought an adversary proceeding seeking to set aside the modification, which was effected without compensation to the debtor, as fraudulent. The court refused to allow the committee to pursue the fraud claim, explaining that the rejection freed the debtor from continuing to pay rent on what was represented to be a burdensome tenancy for years. To permit the committee to set aside the modification after confirmation of the plan and, presumably, declare the lease in full force and effect, would allow the debtor to circumvent its administrative rent obligation to pay postpetition rent in exchange for its rights under the lease. Moreover, the court found itself to have been misled at the rejection hearing, during which the debtor with the committee's acquiescence represented that the lease was burdensome, by the committee's "secret intentions" to later argue that lease, in fact, was valuable. In conclusion, the court emphasized that the committee's argument, in light of the fact that the committee did not claim that the debtor had engaged in any misrepresentation, was "illogical and legally inconsistent and would destroy all finality to the Court's determinations." 49 B.R. at 694. Although the court did not explain how the law applied to the facts, it indicated that the "theories of waiver, laches, estoppel, and collateral estoppel ... would appear to be applicable." *Id.* Unlike in *Fashion World*, the Debtor does not seek to revive a rejected contract that it now feels might have some present or future value; rather the desire here is to vitiate the agreement in its entirety and recover any voidable past transfers.

That res judicata should not apply to bar this adversary proceeding is buttressed by the procedural context in which the Rejection Motion was brought and decided. The Restatement (Second) of Judgments § 26(e) suggests that a court should review the context of the statutory scheme as a whole before determining that a prior adjudication precludes a subsequent lawsuit in a related area. The Restatement recognizes that when considering the entire body of operative law it may appear to the court that "litigation, which on ordinary analysis might be considered objectionable as repetitive, is here intended to be permitted." As an illustration of that point, the Restatement offers that a landlord who prevails on a summary proceeding to dispossess a tenant for nonpayment should not be precluded from bringing a separate suit for past due rent, provided that the statutory system evidences an intent to afford an expedited procedure to reclaim possession without jeopardizing the right to collect arrears. In a similar vein, the court in *Pharmaceutical Manufacturers* refused in part to erect a preclusive bar to a subsequent challenge to the content of certain regulations when it recognized that an earlier suit was brought to address the plaintiff's legitimate need for a prompt determination of the legal effect those regulations would have. 586 F.Supp. at 748. *See also, Board of Ed. v. Hufstedler,* 641 F.2d at 72 (res judicata inapplicable where statutory scheme allowed plaintiff to litigate separately two distinct means to obtain government funds from the same federal program).

The Bankruptcy Code evidences a similar intent to bifurcate the rejection process from that of avoidance of the underlying contract. Pursuant to Fed.R.Bankr.P. 6006 and 9014, a rejection motion is brought in

the bankruptcy court as a contested matter, which is a procedural vehicle designed to decide quickly those matters that move ahead the administration of the estate. A noted treatise has commented that the "formal procedural approach for adversary proceedings ... is, taken as a whole, inappropriate to decide contested matters where the issues may be relatively simple or where expedition is necessary." 9 L. King, *Collier on Bankruptcy,* ¶ 9014.05 at 9014–15 (15th ed. 1990). As discussed above, the validity and enforceability of the claim which arises upon rejection is not considered as part and parcel of the motion. Congress' intent to have contested matters decided expeditiously emerges clearly, given the absence in contested matters of the compulsory counterclaim requirement which, pursuant to Fed.R.Civ.P. 13 and its bankruptcy analog, Fed. R.Bankr.P. 7013, applies to adversary proceedings. Thus, the court in *Resolution Trust Corp. v. Shehu (In re Shehu),* 128 B.R. 26 (Bankr.D.Conn.1991), noted that a lift stay hearing, brought as a contested matter pursuant to Fed.R.Bankr.P. 4001(a), was not the appropriate time for the debtor to raise counterclaims against the creditor; rather, these issues were to be the subject of more complete proceedings to be brought a later date.[8] This observation has also been made by a number of courts in determining whether to apply res judicata to prior bankruptcy court determinations.

In *D–1 Enterprises, Inc., v. Commercial State Bank,* 864 F.2d 36 (5th Cir.1989), the court held that the entry of a consent order lifting the automatic stay in favor of a secured party did not preclude a debtor's subsequent adversary proceeding alleging various lender liability claims, explaining that

[b]ankruptcy is a unique form of litigation in that each case comprises a series of more or less self-contained episodes that resolve particular disputes at partic-

ular times. There are two basic forms of adversary process within a bankruptcy case: "contested matters" and "adversary proceedings." Counterclaims are compulsory only in "adversary proceedings," but not in the quick motion-and-hearing style "contested matters."

*Id.* at 39. The court went on to note that even in adversary proceedings where compulsory counterclaims requirements do apply, Fed.R.Bank.P. 7013 allows for a "liberal escape clause" in that upon leave of court, a debtor in possession who fails to plead a counterclaim through oversight, inadvertence, or excusable neglect, or when justice so requires, may be allowed to amend its pleadings or commence a new adversary proceeding. Accordingly, the *D–1* court did not invoke the doctrine of res judicata because to do so "would lay a heavier burden on the debtor to respond with related claims in some unspecified 'contested matters' than in 'adversary proceedings', an exact inversion of the apparent wishes of Congress." *Id.* at 40; *see also County Fuel Co., Inc., v. Equitable Bank Corp.,* 832 F.2d 290, 293 (4th Cir. 1987) (neither debtor's failure to object to creditor's claim or to raise counterclaim in opposition to creditor's lift stay motion, standing alone, warrant invocation of res judicata). Relying extensively on the rational in *D–1,* the court in *The Fonda Group, Inc. v. Contemporary Packaging Corp. (In The Fonda Group, Inc.),* 108 B.R. 962, 970 (Bankr.D.N.J.1989), held that a debtor's preference action was not precluded simply because it was not raised as a counterclaim in the contested matter the debtor brought to object to the creditor's proof of claim. The court in *In re GHR Energy Corp.* 62 B.R. 226, 232 (Bankr. S.D.Tex.1986), expressed similar concerns, noting in *dicta* that in the usual circumstances "forcing the debtor to object or preserve any right to challenge the underlying executory contract at the time of rejection would concentrate resources of

---

**8.** The *Shehu* court found nothing, however, to preclude a party from presenting evidence of the bona fides of its counterclaims to support the denial of a motion for relief from the stay. The court made clear that only a limited inquiry should be undertaken, as the merits of the counterclaims could not be decided at the lift stay hearing. 128 B.R. at 29. *See also, In re Roxrun Estates, Inc.,* 74 B.R. 997, 1003–04 (Bankr. S.D.N.Y.1987)

the debtor on issues which cannot easily be grappled with during the hectic time at the commencement of a Chapter 11 case."

■ This is not to say, however, that application of res judicata to bankruptcy court determinations turns exclusively on whether the prior adjudication was rendered in a contested matter or adversary proceeding. In a decision acknowledging the validity of its holding in *D–1*, the Fifth Circuit made this very point by stating that the procedural context in which the earlier suit was brought is not a "litmus test" for determining if a subsequent action should be barred, although it might serve as "an important factor in determining whether the claim could or should have been effectively litigated in the earlier proceeding." *See Howe v. Vaughan (In re Howe)*, 913 F.2d 1138, 1146 n. 28 (5th Cir.1990); *Virtual Network Services Corp., v. Brook Furniture (In re Virtual Network Services Corp.)*, 97 B.R. 433, 436–437 (Bankr. N.D.Ill.1989); cf. *Creditors' Committee v. Jermoo's Inc. (In re Jermoo's Inc.)* 38 B.R. 197 (Bankr.W.D.Wisc.1984) (where debtor litigated, and lost, in first adversary proceeding issue whether franchise agreement had terminated prepetition, court, recognizing but not reaching issue of res judicata, ruled on the merits against creditors' committee's challenge to termination as a fraudulent transfer in a second suit).

■ Here, the Rejection Motion which the Defendants argue should give rise to res judicata was brought as a contested matter just days after the Debtor filed its petition. The scope of inquiry at the hearing was a limited one intended to allow the Debtor to expeditiously rid itself of a burdensome contract while continuing towards its goal of reorganization. Requiring the Debtor to raise and litigate the more complex allegations of preference, fraudulent conveyance and the other theories raised in the adversary proceeding would thwart Congress' intent in directing that a rejection motion be resolved as a "fast track", contested matter. To hold otherwise would essentially force a debtor to carry a potentially burdensome contract pending the resolution of an adversary proceeding, a

course which might expose the estate to very substantial administrative expenses in the event the debtor were unsuccessful in setting the agreement aside. I cannot fathom that this result was intended under the Code and therefore find that res judicata is no bar to the Debtor's suit.

■ Having made this determination, I need spend only a few words disposing of the Defendants' other theories as to why this adversary proceeding must be dismissed. Collateral estoppel, or issue preclusion, "prevents the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action." *Balderman v. U.S. Veterans Administration*, 870 F.2d 57, 62 (2d Cir.1989). "If an issue was not actually decided in an earlier proceeding or if its decision was not necessary to the judgment, its litigation in a subsequent proceeding is not barred by collateral estoppel." *Jim Beam Brands Co., v. Beamish & Crawford Ltd.*, 937 F.2d 729 (2d Cir.1991) (citations omitted). Whether the 1989 Agreement was voidable was neither litigated at the hearing on the Rejection Motion nor was resolution of that question necessary to approve the Debtor's request to reject. The focus of the motion was to determine whether the Debtor, in the exercise of its business judgment, ought be allowed to reject the 1989 Agreement as burdensome to the estate. Whether or not a contract which constitutes a transfer can be avoided in bankruptcy is an issue completely separate and distinct from whether or not it is burdensome and may be rejected.

■ In a brief footnote, the Defendants also suggest, without elaboration, that the doctrine of judicial estoppel applies to prevent the Debtor from pursuing its adversary proceeding. This doctrine is an equitable one used to prevent a party from assuming inconsistent positions in subsequent judicial proceedings. *Davis v. Wakelee*, 156 U.S. 680, 15 S.Ct. 555, 39 L.Ed. 578 (1895); *Oneida Motor Freight, Inc., v. United Jersey Bank*, 848 F.2d 414 (3rd Cir.), *cert. denied*, 488 U.S. 967, 109 S.Ct.

495, 102 L.Ed.2d 532 (1988); *Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank A.G. (In re Galerie Des Monnaies of Geneva, Ltd.)*, 62 B.R. 224 (S.D.N.Y.1986). In short, this form of estoppel protects the integrity of the judicial process by preventing a party from playing "fast and loose" with the positions it takes before the court. *Galerie Des Monnaies*, 62 B.R. at 226. Because the relief sought in the Rejection Motion is not inconsistent with that sought in the adversary proceeding or otherwise at odds with representations made to the court, the Debtor is not judicially estopped from pursuing its claims.

Ironically, were judicial estoppel to apply, it is the Defendants who would suffer its consequences. Prior to the hearing, the Defendants filed a written response to the Rejection Motion which, although not objecting to the Debtor's request to reject the 1989 Agreement, nevertheless set out in some detail their view of how a rejection would work.[9] In its written reply, the Debtor suggested that because there was no opposition to the ultimate relief requested, any order I might enter should preserve for all parties any claims and defenses arising from the rejection, with specific reference made to the Debtor's contention that the contract was voidable. Discussion of these issues continued at the hearing on the Rejection Motion, at which counsel for the Defendants noted that his clients would be "willing to live with" an order which provided that to the extent the 1989 Agreement was executory, it would be rejected but that no determination would be made as to the effect the rejection would have. Later during that same hearing, Defendants' counsel offered that once such an order was entered, it appeared that the Debtor and the Defendants would then "have a lawsuit to deal with" and reiterated his understanding that "in the future the Court is going to determine what [rejection] means." The Debtor com-

menced its adversary proceeding just three days after the Rejection Order was entered, an order to which the Defendants had no objection, and which, albeit inartfully, purported to reflect the reservation of rights discussed on the record. The inconsistency then is found in the Defendants' subsequent attempt to bar the litigation after urging me to "get the rejection done" and save any other issues flowing from the parties' dispute for further adjudication.

For all these reasons, the Defendants' motion for summary judgment is denied. Settle Order.

---

**9.** The Defendants argued that the contract was only executory as to future obligations under the agreement. As to portions of the agreement which had been fully performed such as the consideration paid to Gelina and the assignment of the commissions, they argued that the contract was not susceptible of rejection.